13909

DePASS v. BROAD RIVER POWER CO. *ET AL.*

(176 S. E., 325)

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellants,

*Messrs. E. O. DePass, John W. Jennings* and *C. T. Gray-don,* for respondent,

September 25, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This case was first heard at the December, 1933, term of the Court, and thereafter the following opinion—here made a part of this opinion—was filed, in which the judgment below was reversed and a new trial ordered:

The plaintiff brought this action in the Richland County Court, alleging, *inter alia,* that on September 7, 1932, he applied to the defendants for gas and electric service at his residence, 3313 Monroe Street in the City of Columbia, tendering to them at the time the deposit required under their rules and regulations; that they willfully refused to accept the deposit and to furnish the service demanded, unless he would pay to them $20.32, the balance of an old bill charged against him, as trustee, for gas and for electric current furnished by the defendants at 2208 Clark Street and used by a tenant of the plaintiff; and also the payment of $6.06, the balance of a bill "charged in the name of the plaintiff, but in reality against plaintiff's wife who owned the premises at 1907 Pendleton Street, neither of which bills were owed by the plaintiff personally." The prayer was (1) for a writ of mandamus requiring the defendants to fur-

nish the gas and electric service demanded, and (2) for actual and punitive damages in the sum of $2,999.00.

A rule was issued by the County Judge, requiring the defendants to show cause why they should not furnish the plaintiff the gas and electric service asked for. The defendant Broad River Power Company, by way of return and answer, alleged that the "Associated Gas & Electric System is merely a name for the association of certain utility companies and is not a legal entity"; but admitted that the Broad River Power Company is in the business of furnishing electric energy and gas to the citizens of Columbia and vicinity. It also admitted that the plaintiff had made application for gas and electric service at 3313 Monroe Street in the City of Columbia, and in accordance with the defendant's rules and regulations had "offered a $5.00 deposit for electricity and another $5.00 deposit for gas," but alleged: "That defendant refused to accept the deposit or give the plaintiff electric or gas service until the plaintiff paid two certain accounts then outstanding against him, one for electric and the other for gas service at 2208 Clark Street in the sum of $20.32 covered by electric and gas contracts entered into between A. C. DePass individually as owner of the premises and the defendant, the one being dated August 31st, 1929, and the other November 4th, 1930, and also a balance of $6.06 for gas and electric service furnished to plaintiff at 1907 Pendleton Street under contract dated April 15th, 1932, signed by the plaintiff individually as owner of the premises. That these three contracts between the plaintiff and defendant were entered into by plaintiff individually as owner of the premises on account of which no deposit was required or taken, and that at no time until the application for service at Monroe Street did plaintiff ever claim that two of the contracts were with him as trustee, and that the other contract for 1907 Pendleton Street was for service on premises owned by his wife."

Upon a hearing of the matter, Judge Whaley, on September 14, 1932, granted the writ; and while the Court's order

was promptly complied with by the defendant Broad River Power Company, notice of intention to appeal therefrom was duly served.

There were two trials of the case. On the first, the Court directed a verdict for the defendant as to punitive damages, but instructed the jury to find for the plaintiff actual damages, leaving the amount to be fixed by them. A verdict for $5.00 was returned, which, upon plaintiff's motion for a new trial, was set aside on the ground of "inadequacy." From the Court's order no formal notice of intention to appeal was given.

Upon the second trial, Judge Whaley again directed a verdict for the plaintiff for actual damages, leaving the amount to be fixed by the jury, but refused to direct a verdict for the defendant as to punitive damages, submitting that question to the jury, also. There was a verdict for the plaintiff for $600.00 actual and $2,399.00 punitive damages. On defendant's motion for a new trial, the presiding Judge reduced the actual damages to $300.00, but permitted the verdict for punitive damages to stand as rendered. The Broad River Power Company excepts and brings error.

The exceptions raise a number of questions, but the following only are emphasized by appellant in its argument: (1) Error on the part of the trial Judge in granting the order of mandamus; (2) error in refusing to direct a verdict as to punitive damages on the second trial; (3) error in refusing to allow an appeal from his order granting plaintiff a new trial and, accordingly, settling the case for appeal so as to leave out all reference to the first trial and the order granting a new trial; (4) error in granting a new trial on plaintiff's motion following the first trial of the case; and (5) error in not submitting to the jury under proper instruction whether the account due and owing the defendant by the plaintiff was recent."

I. It appears that the granting of the writ of mandamus by the County Judge was based mainly upon the word "re-

cent" used with reference to a past-due bill in *Poole v. Paris Mt. Water Company,* 81 S. C., 438, 62 S. E., 874, 877, 128 Am. St. Rep., 923. In that case, which involved the matter of a disputed claim, the Court announced the following rule: "While a public service water company has the right to cut off a consumer's water supply for nonpayment of *recent and just bills* for water rents, and may refuse to engage to furnish further supply until said bills are paid, the right cannot be exercised so as to coerce the consumer into paying a bill which is unjust, or which the consumer in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company as to such supply for the current term." (Italics added.)

Judge Whaley in his decree calls especial attention to the use of the phrase "recent and just bills," and cites later decisions of the Court in which the rule laid down in the *Poole case* is quoted with approval. He then states that "for the purposes of this writ only I hold that a bill standing for a year and four months is not a recent bill."

The appellants contend that neither the *Poole case,* nor any case following it, has held that a public utility must accept as a customer one who is admittedly indebted to it because the claim is more than a year old, and points to the following holding of the Court in the *Poole case* as showing that the age of the bill in no way affected the Court's decision: "The inconvenience arising from subjecting the water company to the necessity of resorting to the regular Courts to collect disputed claims is not to be compared to the hardship of the consumer, as a member of the public, involved in permitting the water company to be judge in its own cause, and to coerce the disputant into submission by denying him water."

The undisputed facts show that the house occupied by Poole was owned by one Hamby, and that the water was supplied under a contract made between the company and

Hamby before Poole became a tenant. About one year after he took possession of the premises, Poole was presented with a bill by the company for $65.00, which he refused to pay, claiming that it was exorbitant. Within ten days after payment of the bill was demanded, the company cut off the water supply. The Court held, under the facts, that the water was cut off contrary to the company's rules, for nonpayment of a bill which appeared to be exorbitant, and which Poole in good faith and with show of some reason disputed, and that thereafter the company refused to enter into a contract to supply the tenant for the current year, except upon payment of the disputed bill. As contended by the appellants in the case at bar, it appears that the decision rested largely upon the fact that there a *bona fide* dispute as to the correctness of the bill rendered.

In *Benson v. Water Company,* 88 S. C., 351, 70 S. E., 897, 898, while the rule laid down in the *Poole case* was quoted with approval, no facts appear with reference to the age of the disputed unpaid bill which affected the decision in any way. That case was decided (1) under the pertinent provisions of the contract made between the company and the consumer, and (2) on the authority of the *Poole case,* that where there is a *bona fide* dispute as to the amount due, the water company has no right to require payment of the disputed amount as a condition to restoring its service.

In *Johnson v. Gas & Electric Company,* 106 S. C., 447, 91 S. E., 734, no question was raised as to the bill rendered not being a recent one. That question, therefore, was not involved in the decision. The Court stated the issue to be whether the company could discontinue the service where there was a debt due for water, supplied at a previous time by another company, the claim having been assigned to the defendant. It was held that the case of *Benson v. Water Company, supra,* was conclusive of the question, the Court also quoting with approval the language used in the *Poole case.*

In *Barrett v. Broad River Power Company,* 146 S. C., 85, 143 S. E., 650, 657, the Court, speaking through Mr. Justice Blease, now Chief Justice, held that "at the time of the discontinuance of the service, the plaintiff was due to the defendant a recent and just bill for current rents, which the plaintiff declined to pay"; and that "under the *Poole case,* and the other cases resting on that decision, the defendant here had the right to discontinue its service to the plaintiff upon the nonpayment by the plaintiff of recent and just bills for the service furnished him, and had, also, the right to refuse a further supply of electricity until those bills were paid." In that case it appears that the rents in arrears were for the four months immediately preceding the discontinuance of the service by the company.

Judge Whaley, relying upon the word "recent," as used in the several cases cited, held, as we have stated, that "for the purposes of this writ only * * * a bill standing for a year and four months is not a recent bill." The appellants urge that this was error, as in no one of the cases named was the Court's decision affected by the age of the claim. While this contention is not without merit, the conclusion seems inescapable that the word "recent," as and in the connection used by the Court, was intended to be given some force and effect. We think, in the light of the decisions cited, that the following rule may be fairly stated: That if a customer fails or refuses to pay a just bill due and owing by him for services furnished him by a utility company, when such bill is duly presented for payment, and the company thereafter practically abandons the collection of such claim and permits it to become stale without exercising its right to discontinue service to the customer unless and until the bill is paid, such company will be estopped to discontinue the service, or to refuse to furnish the customer additional service, merely because of his refusal to pay such bill after it has become old and stale, and any discontinuance or refusal of service by the company in such case will be at its own peril.

Upon a hearing of the matter on the return of the defendant Broad River Power Company to the rule to show cause, each side gave testimony before the County Judge, a brief statement of which is set out in his order. Questions of fact, in the matter of granting a writ of mandamus, are primarily and peculiarly for the Judge to whom the application is made; and as there was some evidence before Judge Whaley which tended to support his holdings, this Court will not interfere with the conclusion reached.

II. The plaintiff based his claim for punitive damages upon the alleged willful and wanton refusal of the defendant to install the gas and electric meters in his residence on Monroe Street. On the first trial, the Court, as we have stated, directed a verdict as to such damages in favor of the defendants; but on the second trial, the Court submitted the question to the jury. In refusing the motion, the Judge gave as his reasons for doing so that there were two material things present in the second trial which were absent in the first: (1) That on the first trial there was no evidence that plaintiff had called to the attention of the power company that he was trustee for the Clark Street property prior to his demand for service at the Monroe Street house, while on the second trial plaintiff testified that he had called that fact to the company's attention on one or more occasions prior to the demand for service at Monroe Street. (2) That there was testimony on the second trial, apparently not given at the first, that the company had sent an employee to plaintiff's Pendleton Street residence, "during the month when his daughter was about to be married," for the purpose of discontinuing service at his residence there because of the unpaid bill in question, from which the inference might be drawn that the company, in selecting such a time as that willfully disregarded the rights of the plaintiff.

While there was no evidence that the company, at the time its employee was sent to collect the bill at the Pendle-

ton Street residence or to discontinue service there, knew that plaintiff's daughter was to be married, and while the company, under its contract with the plaintiff to furnish service at the Clark Street residence, knew no one in the transaction but the plaintiff, we think there was some evidence from which the jury could infer willfulness on the part of the defendant in its refusal to furnish the service demanded for plaintiff's Monroe Street residence. There was testimony tending to show that the company had been granting plaintiff indulgences from time to time with respect to the payment of the Clark Street bill, and that it was finally arranged, apparently in the nature of a compromise, between the plaintiff and an agent of the company, that the former would pay the bill "as convenient." Under this testimony it was for the jury to say whether the defendant willfully disregarded and violated the rights of the plaintiff when it refused to give him service at his Monroe Street residence unless he paid, despite the arrangement testified to, the entire amount of the Clark Street bill at once.

III. As to the third question, the position of the appellant is that the order of Judge Whaley granting plaintiff's motion for a new trial was an intermediate order involving the merits and necessarily affecting the final judgment appealed from in the second trial of the case, and that, under Section 777 and Subdivision (D) of Section 26 of the Code of 1932, this Court may review such order, despite the fact that appellant gave no notice of intention to appeal therefrom.

Section 777 provides: "Upon an appeal from a judgment, the Court may review any intermediate order involving the merits and necessarily affecting the judgment."

And Subdivision (D) of Section 26:

"The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:

"(1) Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the

Court of Common Pleas and General Sessions, brought there by original process, or removed there from any inferior Court or jurisdiction, and final judgments in such actions: Provided, If no appeal be taken until final judgment is entered, the Court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from."

The view taken by the appellant is undoubtedly correct, if the order which it seeks to have this Court review is an intermediate one involving the merits and affecting the final judgment appealed from. See *McCoy v. State Highway Department,* 169 S. C., 436, 169 S. E., 174, and cases cited. While the question is not free from doubt, it seems that an order granting a new trial cannot be reviewed on appeal from a final judgment obtained in the second trial of the case. Certainly not, if notice of intention to appeal therefrom is not given within the time required by law. See *Kennedy v. City of Greenville,* 78 S. C., 124, 127, 58 S. E., 989. The County Judge, therefore, committed no error as contended.

IV. Even if this question were properly before the Court, it could not be sustained for the reason it is not made to appear that Judge Whaley abused his discretion. It is now well settled that, in actions for torts, a new trial may be granted by the presiding Judge, in the exercise of a just and wise judgment, upon the ground that the verdict is grossly inadequate. See *Bodie v. Charleston & W. C. Railway Company,* 66 S. C., 302, 44 S. E., 943.

V. As to the fifth question, we think there is merit in the appellant's contention. From the record before us, it appears that the company presented a bill each month to the consumer for service rendered the previous month, and if the customer failed to pay a just bill when duly presented, the company, under its contract, rules, and regulations, might discontinue the service if it desired to do so. In the case at bar, the tenant Williams, as we have

stated, vacated the Clark Street house, leaving an unpaid gas and electric bill of approximately $28.50, which appeared on the books of the company as a claim against the plaintiff under his contract with it. At the time, the plaintiff himself occupied his home on Waccamaw Street, but later lived on Pendleton Street. The company each month placed on respondent's current account the amount owing for the service which it had furnished at the address on Clark Street, and during the time, which extended over a period of a year or more, the plaintiff paid $8.52 on the Clark Street bill. The company, in these circumstances, claiming that it was trying to accommodate the plaintiff, permitted the bill to age to the extent of sixteen or eighteen months.

Was such claim, at the time respondent made demand on the appellant for gas and electric service at his residence on Monroe Street, a stale or recent one? Under the facts stated, we think the jury was the proper tribunal to answer this question, as more than the mere age of the bill, as indicated in our discussion of Question I, was involved. The Court, therefore, should have submitted this issue to the jury under proper instructions. The exceptions alleging error in this particular are sustained.

In due time after the filing of the opinion, the respondent sought a rehearing upon the ground that the Court had overlooked and failed to consider a material and applicable principle of law, namely, "that even if the bills for the Clark Street house were recent and just bills, nevertheless they were bills for a previous debt and at a different place and, therefore, appellant could not legally refuse respondent service at the Monroe Street house for a bill incurred under a separate and distinct contract, in no-wise connected with the demand for service at the Monroe Street house."

The Court gave full consideration to the petition, but was unable to find, upon a further examination of the record for appeal, that the County Judge, while referring to it, applied this principle in the granting of the mandamus. Nor did the

Court recall that counsel for respondent "insisted upon it" on the hearing of the appeal. Furthermore, it appeared that the appellant had not discovered that Judge Whaley rested his conclusions upon it, as no exception had been taken to any such holding. However, as respondent earnestly urged in his petition that he had this principle in mind all the while as the "prime basis of his protest," we granted the rehearing; but, being entirely satisfied with our disposition of appellant's exceptions, directed that only this ground of the petition be presented and argued. This was done at the June, 1934, term of the Court, and the question is now before us for consideration and decision.

The respondent contends that the company attempted to write a provision into its contracts for the furnishing of electric and gas service which is contrary to the principles announced in our decided cases, and which was not allowed by the rules and regulations of the Railroad Commission, either at the time the agreements were made or when the service in question was applied for. The appellant takes the position that a public utility service company should have the legal right to discontinue or deny service to a patron who refuses to pay a past-due, undisputed bill for service given him by the company, whether such debt of the patron was incurred by him for service rendered at one address or another; that this is the only plan by which such bills can be collected, as resort to legal process to enforce their collection would be prohibitive because of the cost, especially as to the great number of small claims; and that the rule contended for is not in conflict with the decisions of this Court, is both fair and reasonable, and rests upon the necessity of the company collecting its revenues to insure its own existence, and, further, should be allowed in justice to paying patrons.

The following cases are cited and relied on by the respondent as being "absolutely controlling" of the issue before us: *State ex rel. Gwynn v. Citizens' Telephone Company,* 61 S. C., 83, 39 S. E., 257, 55 L. R. A., 139, 85 Am. St.

Rep., 870; *Poole v. Paris Mt. Water Company, supra; Benson v. Water Company, supra; Johnson v. Carolina Gas & Electric Company, supra; Barrett v. Broad River Power Company, supra; O'Neal v. Citizens' Public Service Company*, 157 S. C., 320, 154 S. E., 217, 70 A. L. R., 887.

In the *Gwynn case*, it appears that the respondent company, in the exercise of the franchise conferred by its charter, had established a business in the City of Spartanburg, and had placed telephones in Gwynn's grocery store and at his residence, under an agreement with him that he should use them exclusively. While other subscribers of the company in the city were furnished with telephones by it, under a similar agreement, some of them, including merchants and physicians, and at least one groceryman whose place of business was on the same street as that of Gwynn's, were supplied with telephones by the respondent under contracts which contained no stipulations as to exclusive use; and these subscribers used the telephones of the Bell Company, also. Gwynn, having purchased a market adjoining his store, cut a door through the wall separating them, and thus provided a means of communication between the two structures, which gave him the use of the telephone that had been installed in the market by the Bell Company. The respondent thereupon removed the telephones which it had previously placed in relator's grocery store and at his residence, and refused to replace them upon the demand of Gwynn, although it accepted rent due for past use, except under the terms of the former agreement. Gwynn thereupon applied to the Court for a writ of mandamus to compel performance. The Circuit Judge refused the writ, and on appeal to this Court it was held that the company was, in one sense, a common carrier of news and as such was "bound to supply all alike, who are in like circumstances, with similar facilities, under reasonable limitations, for the transmission of news, without any discrimination whatsoever in favor of nor against any one"; and that, under the facts above recited, the con-

tract being clearly discriminatory, the respondent had no good reason for its refusal to furnish the service demanded and that it should be compelled by mandamus to do so. The Court, again considering the same contract in *Gwynn v. Telephone Company,* 69 S. C., 434, 48 S. E., 460, 463, 67 L. R. A., 111, 104 Am. St. Rep., 819, held that it was void as against public policy, quoting from 9 Cyc., 533, as follows: "Although the contract may be fair and reasonable between the parties, yet if it is so injurious to the public interest that public policy requires that it should not be enforced it will be held void." The Court then pointed out that the contract before it "was unreasonable because its tendency was to stifle competition between common carriers and to create a monopoly in favor of the defendant." It is easily seen that this decision, under the facts stated, is not applicable to, much less controlling of, the issue here made.

The *Poole case* gives no aid or comfort to the respondent. As stated above, the decision rested mainly upon the fact that there was a *bona fide* dispute as to the correctness of the bill rendered. In addition, the Court pointed out that the company, under the admitted facts, "was acting in breach of its own rules in cutting off the water supply."

As already indicated, one of the grounds on which the decision in the *Benson case* rested was the pertinent provisions of the agreement between the customer and the company, the other being that there was a *bona fide* dispute as to the bill rendered. The Court said: "Section 2 of the contract provides that the company may require, as a condition of turning on water after it has been cut off for nonpayment of rent, 'payment of all water rents or other charges herein agreed to be paid to the expiration of the contract.' The 'water rents and other charges' referred to in Section 13 of the contract are the same as those expressly mentioned in Section 2." The Court then held that "the respondent cannot be allowed to add to these stipulations by parol evidence a further stipulation that the petitioner, as a condition of hav-

ing his water service restored, should pay a debt not mentioned in the contract."

It is upon this holding that the respondent in the case at bar relies. The agreement before us, however, provides that the failure of the consumer to pay his bills, "either under this contract or any other contract," gives to the company the right to discontinue the service and remove its apparatus from the premises. And we see no real difference between the right of a utility company to discontinue service of a certain kind or type, on account of the consumer's failure to pay a past-due bill which is just and undisputed, and which the company has not allowed to become old or stale, and its right to refuse, for the same reason, to furnish at another place, and under a similar contract, upon demand of such customer, the same kind or type of service. Clearly, the decision in the *Benson case,* while it may afford some ground for argument, is not "absolutely controlling" of the issue here presented. We may say, also, that the Courts have been inclined to go as far as is reasonably possible in requiring utility companies to furnish its customers with water, an element vitally necessary to the existence of life.

An examination of the *Johnson case* reveals facts which differentiate it from the one before us. The defendant company there discontinued the service because of a debt due for water by the consumer, supplied at a previous time and by another company. The Court held that service could not be discontinued for "past-due bills, under a contract made with another concern, and assigned to the appellant."

We think the decision, under the facts stated, was correct; but it is not applicable here. In this case the unpaid bill was due and owing the appellant by the respondent under a contract made between them, and was for gas and electric current furnished by the company itself.

Nor does it appear that the *Barrett case* is controlling here. The plaintiff there admitted that he owed the defendant a past-due bill for electric energy, but insisted that serv-

ice had been wrongfully discontinued, because the company, at the time such action was taken by it, was indebted to him under a contract for the building of an electric extension. The Court pointed out, in detail, the real differences between the two contracts—that the type of service rendered under one was entirely different from that given under the other—and held that to sustain the contention of the plaintiff, it would have to go further than it went in the *Poole case,* or in any one of the cases based on that decision.

Mr. Justice Blease, now Chief Justice, who wrote the opinion of the Court, said: "The denial of the usual power of a public service company to cut off its patron's supply of water or electricity, when there is a *bona fide* dispute as to the amount due for the service furnished, is founded upon the principle that the patron is not to be penalized, oppressed, or coerced because he asserts his rights as a citizen to dispute, in good faith, a bill of the company. It is not based upon the other idea that the consumer has the right to require a continuance of the service when accounts therefor are not questioned, until there is a settlement of some other account or demand that the consumer may have, or claim to have, against the company, *other than one with reference to the service bills.* If the latter principle were the foundation of the rule in respect to the mutual rights of the parties as to a continuation of the supply of water and electricity, impecunious and advantage seeking individuals could, by the assertion of almost any kind of demand against a public service company, require it to continue almost indefinitely to supply them with either water or electric current." (Italics added.) And observed: "It could not have been the intention of the principle of the *Poole case* to prevent, in many instances, the right of a public service company to collect money honestly due (?) it from a delinquent patron. It surely was not intended to make the patron a judge and jury to pass upon the justness of some claim he might hold against the company, extrinsic to the particular contract as to the supply of water or electricity."

It is seen that the situation in the *Barrett case,* as disclosed by the facts recited in the opinion, is entirely different from that in the case at bar. There, as already indicated, the Court pointed out that the plaintiff's claim against the company had no "reference to the service bills," and held, for the reasons stated by it, that the consumer has no right to require a continuance of the service by the company when accounts therefor are not questioned, "until there is a settlement" of such claim or demand. Here, as we have said, the respondent owed the company an undisputed bill for gas and electric current furnished at the Clark Street house, under a contract between him and the defendant; the same kind of service was demanded for his Monroe Street home, to be furnished under a similar contract. The question as to any real difference between discontinuing or refusing service, in cases where the company has the right to do either, is disposed of in our discussion of *Benson v. Water Company, supra.*

In the *O'Neal case,* it seems that the plaintiff, who was a subscriber of the defendant, a telephone company, challenged the correctness of a bill presented to him for service rendered, and refused to pay it. Thereupon, the defendant notified him that unless he did pay, his telephone would be removed; and upon his failure to do so, service was discontinued. Subsequently, plaintiff went to one of the company's regular public pay stations, and attempted to put in a long distance call, for which he offered to pay in advance the required toll, but the defendant refused to place the call or to give him any service whatsoever. The Court, speaking through Mr. Acting Associate Justice Graydon, held that the company, in the circumstances recited, would have no legal right to refuse to furnish the plaintiff service at its public pay station, even if the bill in question were just and correct.

We think the defendant was here rendering, in a sense, two distinct kinds of service, although both had to do with the transmission of news by telephone. At and through the medium of its pay station, open to the public generally, the

company offered to give to any one, upon payment in advance of the tolls required, the service there furnished. It is clear that this offer, upon tender by any person of the charge made, effectually bound the defendant; and, as a common carrier of news (*Gwynn case, supra*), it could not discriminate against any applicant who offered to comply with its regulations pertaining to such service. On the other hand, the telephone installed at the residence or office of the plaintiff was placed there for his own private use, under an express or implied contract between the defendant and the subscriber; the latter paying for the service given in accordance with such agreement and the reasonable rules of the company, but never in advance. It does not appear, therefore, that the decision is controlling of a case, such as the one before us, where the service rendered and demanded is of the same type or kind, and is furnished under similar contracts.

It is true that a public service utility company, in the exercise of the franchises granted it, has certain rights and privileges not enjoyed by private enterprises. But it must be remembered that, as such utility, it is required to properly serve the public, and this duty or obligation it can neither neglect nor avoid. Nor can it choose its own customers, but must serve all who comply with its reasonable rules and regulations. And, as held and emphasized in the *Barrett case,* and indicated in all the decisions, it will not be permitted, should it be so minded, to exploit the public it serves, or to coerce its patrons, by any method or plan devised by it, into paying past-due bills about which there is a *bona fide* dispute. However, it is admittedly entitled, the same as a conservative private business which is subject to similar risks and uncertainties, to a fair return on the value of its property used and useful in the service of its customers; and, as is its duty, the rate-making body named by the Legislature for that purpose fixes such rates, upon a full consideration of all the relevant facts and elements entering

into its determination of the matter, as will insure such a return, but no more. Hence, it follows that such a company cannot properly render the public service required of it, if it is unable to collect, by some inexpensive plan or method, just and undisputed bills owing it by its patrons.

Considering broadly, therefore, the question before us, we think, and so hold, that the position of the appellant should be sustained. Unquestionably, the rule contended for by it is consonant with reason and fair dealing. Paying patrons will not object to it, and others should not. It is not found to be in conflict with any rule laid down in the decisions above cited, or with the additional holding in this case, that the company cannot, except at its own peril, discontinue or deny service to a patron who refuses to pay a just, undisputed bill which the utility has allowed to grow old or stale by practically abandoning its collection. As already indicated, the rule is intended only to prevent the loss of revenues justly due the company—the collection of which by legal process, in many cases, would be practically prohibitive because of the cost, with the consequent result of injustice being done to paying customers in the fixing of rates. See *Southwestern Telegraph & Telephone Company v. Danaher,* 238 U. S., 482, 35 S. Ct., 886, 59 L. Ed., 1419, L. R. A., 1916-A, 1208.

The respondent has cited a number of decisions from other jurisdictions, all of which we have read and considered. While most of these cases may be differentiated from the one at bar, it appears that *Gaslight Company v. Colliday,* 25 Md., 1, decided in 1866, gives support to plaintiff's contention. However, that decision, made under conditions different from those now prevailing, while deserving of respect, does not meet with our approval.

For the reasons stated in our discussion of the fifth question raised by appellant's exceptions, the judgment of the Court below is reversed and the case remanded for a new trial consistent with this opinion.

Mr. Chief Justice Blease, Messrs. Justices Carter and Bonham and Mr. Acting Associate Justice W. C. Cothran concur.