Marlan A. CULLINANE and Katherine Cullinane Varden, Committee of the Person and Estate of John T. Cullinane, Appellants,

v.

POTOMAC ELECTRIC POWER COMPANY, a corporation, Appellee.

No. 2224.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 15, 1958.

Decided Jan. 9, 1959.

Daniel B. Maher, Washington, D. C., for appellants.

Thomas E. O'Dea, Washington, D. C., with whom Cornelius Means, Washington, D. C., was on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant Katherine Varden telephoned appellee in November 1954 and requested that electricity be furnished to a certain home located in the District of Columbia. Appellee agreed and service was instituted promptly. She also asked that all bills be sent to a specified address in nearby Alexandria, Virginia.

Appellee has adopted various rules and regulations governing service which are on file with, and approved by, the Public Utilities Commission of the District of Columbia.[1] These rules provide, among other things, that in order to obtain service a customer must deposit with the company a sum of money as a guarantee for the payment of bills. In the event that a customer does not make the required deposit, the company is authorized by the rules to discontinue service upon five days' notice.

On December 2, 1954, Mrs. Varden was sent the following letter which she admits receiving:

"The account for electric service supplied to [517 Park Road] has been placed in your name.

1. Code 1951, §§ 43-323, 324.

"In connection with this account a deposit of $15.00 will be required. * * * Will you please mail a remittance for that amount or call at our office and make the deposit, sometime within the next 5 days.

"Also please sign the enclosed application form and return with the deposit."

However, Mrs. Varden did not send appellee either the $15 deposit or the completed application, because, as she testified, "[T]he electricity had been turned on and I was expecting a bill for the electric service and I thought I would send the deposit with the bill. * * * I didn't interpret it to be anything immediately urgent."

Appellee claimed that it sent Mrs. Varden a notice on December 17 which read in part:

"When the account for electric service supplied to the above-mentioned premises was placed in your name, you were advised a signed application and a deposit of $ would be required.

"An examination of our records indicates this signed application and deposit have not been received. In order to avoid the inconvenience caused by the disconnection of service, this deposit must be received not later than December 24."

Mrs. Varden denied receiving this letter.

On January 26, 1955, the electricity was disconnected. Two weeks later Mrs. Varden visited the house and discovered extensive damage to the plumbing, radiators and interior, which she contended was caused by the failure of the electrical service. Her theory was that the discontinuance of the electricity caused the electrically controlled gas furnace to stop working; that as a result the abnormally cold weather at that time caused the water pipes and radiators to freeze and burst.

Appellants brought this action alleging breach of contract and negligence. At the conclusion of all the evidence the court, sitting without a jury, found for appellee, and this appeal followed.

Appellee's principal defense was that it was authorized by its rules to discontinue service because of Mrs. Varden's failure to remit the required deposit, and consequently it did not breach its contract. Appellants contend, first, that Mrs. Varden was not bound by the company's rules because they were not brought to her attention or made known to her and she had not assented to them. We cannot agree.

It is a generally accepted principle of law that, in the absence of any unfair practice on the part of the public utility, the rules and regulations adopted by the utility, which are filed with and approved by the regulatory body, necessarily enter into any contract made with the utility; these rules are binding on both the customer and the utility, and actual knowledge thereof or assent is legally immaterial.[2] Approval by the regulatory body is conclusive on the question of the utility's right to adopt a rule and its reasonableness.[3] Consequently, in the instant case, whether Mrs. Varden had actual knowledge or assented to appellee's rules relating to discontinuance of electricity for nonpayment of certain charges is immaterial. When she requested service, she was bound by operation of law to comply

**2.** Hischemoeller v. National Ice and Cold Storage Co., Cal.App.1955, 284 P.2d 81, 87, affirmed 1956, 46 Cal.2d 318, 294 P.2d 433, 437; Carroway v. Carolina Power & Light Company, 1954, 226 S.C. 237, 84 S.E.2d 728, 731; Illinois Bell Telephone Company v. Miner, 1956, 11 Ill. App.2d 44, 136 N.E.2d 1, 9; Wilkinson v. New England Tel. & Tel. Co., 1951, 327 Mass. 132, 97 N.E.2d 413, 415–416; Western Union Tel. Co. v. Esteve Brothers & Co., 1921, 256 U.S. 566, 571–572, 41 S.Ct. 584, 65 L.Ed. 1094; McTighe v. New England Telephone & Telegraph Co., 2 Cir., 1954, 216 F.2d 26.

**3.** Lewis v. Potomac Electric Power Co., 1933, 62 App.D.C. 63, 64 F.2d 701.

with appellee's rules which had been approved by the Public Utilities Commission of the District of Columbia.

Further, it is apparent that Mrs. Varden was aware of the rule concerning the deposit. Appellee's letter of December 2, which she admits receiving and reading, clearly stated that a deposit was required.

 Appellants contend that the existence of the abnormally cold weather conditions at the time and the probability of an increased danger to the house if electricity were discontinued imposed the burden of a higher degree of care and an additional duty on appellee to modify its normal course of conduct. Appellants argue that in these circumstances appellee should have made greater efforts to communicate knowledge of its rules and notice of the impending discontinuance to Mrs. Varden. However, in the absence of a positive tort, the rule is that the utility's right to discontinue service for failure to comply with its regulations is unaffected by the fact that such an act would result in a foreseeable [4] danger and damage to person or property.[5]

 Appellants claim that appellee's delay of about a month before exercising its rights was such as to lead Mrs. Varden to believe that electricity would continue to be furnished, and therefore that appellee was estopped from exercising its right to shut off the service, relying on De Pass v. Broad River Power Co., 1934, 173 S.C. 387, 176 S.E. 325, 328, 95 A.L.R. 545. Generally, to effect an estoppel by delay, the delay, considered with the other circumstances in the case, must be such as to indicate an intention to abandon rights or a negligent failure to assert them.[6] The trial court held in effect that the delay here was not excessive or such as to work an estoppel, and we think this conclusion was permissible for several reasons: first, the

delay was slight as compared to the delay in the De Pass case of a year and four months; second, part of the delay period fell during the holiday season; and finally, a large company such as appellee which serves hundreds of thousands of customers cannot be expected to adjust each case in a moment.

 Appellants argue that appellee failed to comply with its own rules requiring five days' notice to the customer before it could disconnect the electricity. Appellants rely on Mrs. Varden's testimony that she never received the letter of December 17, the "disconnect" notice. Appellee contends that whether Mrs. Varden received the December 17 letter is immaterial, since she knew from the rules and the letter of December 2 that a deposit was required, and that if she did not furnish the deposit, service would be shut off. This position is untenable, for appellee could not deviate from its rules any more than Mrs. Varden could, and therefore actual notice was necessary, as the rules provide, before appellee could exercise its rights.

Alternatively, appellee urges that Mrs. Varden was given notice. It points to the trial court's finding that Mrs. Varden did receive the letter of December 17. This finding was based on the presumption of receipt created by appellee's proof that the letter was actually mailed, with the proper address and postage on it. Appellants challenge the sufficiency of the evidence to establish the mailing.

There was testimony relating to the office customs and procedural steps followed generally in the preparation of a "disconnect" notice. Appellee offered a copy of a form letter sent in such a situation. An entry on a record kept in the regular course of business indicated that such a form letter was sent to Mrs. Varden on Decem-

---

4. The damage here was foreseeable. A. P. Woodson Company v. Sakran, D.C. Mun.App., 1957, 129 A.2d 175, 177.

5. Annotation, 132 A.L.R. 914.

6. 19 Am.Jur., Estoppel, § 59.

ber 17. The records did not disclose what address or postage was placed on the envelope or whether the letter was delivered to the post office. The envelopes customarily used bore appellee's return address but the letter in question was never returned.

In Allied American Mutual Fire Insurance Co. v. Paige, D.C.Mun.App.1958, 143 A.2d 508, we held that mailing may be shown by evidence of the office customs usually followed when a letter is posted, coupled with proof that the custom was actually complied with in the instance in question. We further ruled that proof of compliance with the custom may be supplied not only through live testimony but also through records kept in the regular course of business. In the present case, there was evidence as to the office usage, and this evidence contains all of the necessary elements, drawing up of the letter, enclosure in an envelope, delivery to the post office, proper postage and address. However, the proof through business records of compliance with the usage in the instance under consideration lacks certain of these elements; the record entry, a code symbol, indicated only, according to the testimony, that a "disconnect" notice "was sent out on December 17 * * *."

We do not believe that this deficiency is fatal under the circumstances of this case. It would, of course, have been desirable if appellee's records had contained more detailed information, especially in view of the sharp factual conflict created by Mrs. Varden's denial of receipt of the December 17 letter.[7] There are, nonetheless, other facts present which tended to reinforce the bare statement that notice "was sent out." One prior letter had been sent from the same office, which Mrs. Varden admits receiving. Further, the letter of December 17 was never returned by the post office. As we stated in Columbia Fi-

nance Company v. Worthy, D.C.Mun.App. 1958, 141 A.2d 185, 187 in a somewhat similar situation, "[F]actors such as these have been held to strengthen the presumption * * *." We conclude that the trial court was justified in finding that notice was mailed by appellee and received by Mrs. Varden.

Affirmed.

7. See, for example, the records used to show compliance in the Allied American case, supra.