**John JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12147.**

District of Columbia Court of Appeals.

Submitted April 5, 1978.

Decided April 28, 1978.

David J. Schmit, Washington, D. C., appointed by the court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., Washington, D. C., with whom John A. Terry, Michael W. Farrell, Norman M. Monhait and John H. Korns, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted by a jury of assault, D.C.Code 1973, § 22–504; threats to do bodily harm, D.C.Code 1973, § 22–507; and unlawful possession of a pistol after conviction of a felony, D.C.Code 1973, § 22–3203(2).[1] At issue on appeal is a "defense of property" instruction given the jury over the objection of appellant.

A special collector for the Washington Gas Light Company testified at trial that he arrived at appellant's house one morning to "remove the gas meter" because payment of the gas bill was long overdue. When the collector started to turn off the meter, appellant jumped on him and knocked him down. Appellant threw the tool the collector was using into the street, ran up the stairs, returned with a gun in his hand, and ordered the collector to leave the house or he would blow his brains out. The collector hastily retreated to seek the police. Unsuccessful in that endeavor, he decided to return to his truck. Appellant then came from the house and struck him with a stick. The collector again ran off, found a police officer, and appellant was later arrested.

Appellant testified that on a cold day in January, the gas company employee rapped on the door and said he was there to read the gas meter. The employee looked at the meter, which was in the hallway just inside the door, and said he needed a ladder from his truck. When appellant went upstairs to get his gas bills, the amount of which he had long disputed, the employee tried to

1. The jury verdict form shows a conviction of this latter charge. The judgment and commitment order erroneously shows a conviction of possession of a prohibited weapon (stick). D.C.Code 1973, § 22–3214(b).

turn off the gas. Appellant ran down the stairs, hit the employee's hand with a stick, threw his pliers out the door, and ordered him out of the house under the threat of getting his brains blown out. Appellant pushed the employee, who ran out the door.

## I

The jury instruction of which appellant complains concerns the right of a person to defend his property.[2] The instruction given was in part:

Generally one person cannot enter another person's property without the owner's permission. And mostly when requested to do so by the owner.

Under regulations approved by the District of Columbia Public Service Commissioner, a representative of a utility company shall be given access to the premises of a customer at reasonable hours for purposes related to utility services.

Thus, the representative of a gas company, Mr. Davidson, had a right to be on Mr. Jackson's property for purposes related to the gas services, and only for those purposes. And his entry on the property cannot exceed the time and efforts necessary to accomplish those purposes.

If Mr. Davidson's entry on the property was for other purposes or exceeded what was necessary for the utility purposes, then the defendant Mr. Jackson would have the right to use reasonable, but not deadly force to defend his property.

The instruction varied in some respects from the basic provisions of the defense of property instructions. Appellant's complaint is that the language used does not encompass his contention that a utility company representative cannot enter a dwelling and perform acts dangerous to the health

and welfare of the citizen, nor can he use self-help when such self-help might lead to a breach of the peace.

The variations in the basic instruction were based on Gas Company Tariff provisions[3] which read:

The representatives of the Company shall be given access to the premises of the Customer at all reasonable hours for obtaining meter readings, for shutting off the flow of gas for reasons herein prescribed, for inspection of piping and appliances, and for inspecting, removing, repairing, protecting, or preventing or terminating any illegal use of the property of the Company installed on the premises. [Section 5(b) at Original Page 22.]

The Company may discontinue service to a Customer and remove its property without being liable to the Customer or to the tenants or occupants of the premises served, for any loss, cost, damage or expense occasioned by such discontinuance or removal, for any of the following reasons:

\*   \*   \*   \*   \*   \*

(3) Failure to pay any bill for gas service after the Company has made a reasonable attempt to effect collection and has given the Customer written notice that he has 5 days, excluding Sundays and holidays, in which to make settlement on his account or have his service denied. [Section 11(b) at First Revised Page 27.][4]

## II

■ It is true that a gas company employee cannot with impunity forcibly enter a customer's premises to read meters. *Axman v. Washington Gaslight Company*, 38

---

2.  The testimony was that the house was heated by gas alone, the weather was very cold, and there was a baby in the house.

3.  Washington Gas Light Company Rate Schedules and General Service Provisions for Gas Service in the District of Columbia.

4.  D.C.Code 1973, § 43–1205, provides:
    If any person or persons, supplied with gas, neglect or refuse to pay the amount due for the same, such company may stop the gas from entering the premises of such person or per-

sons. In no case shall the officers, servants, or workmen of the company remove a meter from premises supplied by the company, unless by consent of the consumer, without first giving forty-eight hours' notice in writing by leaving the same at the premises of the consumers; and said removal shall take place only between the hours of eight o'clock in the forenoon and two o'clock in the afternoon. It shall be lawful for Congress at any time hereafter to alter, amend, or repeal this section.

App.D.C. 150 (1912); *Axman v. Washington Gaslight Company,* 38 App.D.C. 162 (1912). Nor can he regain possession of a gas meter in other than a peaceable manner. *Ryerson v. Carter,* 92 N.J.L. 363, 105 A. 723 (Sup.Ct. N.J.1919); *Dobbs v. Northern Union Gas Company,* 132 N.Y.S. 792 (Sup.Ct.N.Y.1912). Additionally, however, an arbitrary refusal by the customer to permit entrance is wrongful. *Id.* at 793.

■ The Gas Company's Tariff filed with the Public Service Commission is a part of its contract with the customer and is binding on both. *Cullinane v. Potomac Electric Power Company,* D.C.Mun.App., 147 A.2d 768 (1959).

> It is a generally accepted principle of law that, in the absence of any unfair practice on the part of the public utility, the rules and regulations adopted by the utility, which are filed with and approved by the regulatory body, necessarily enter into any contract made with the utility; these rules are binding on both the customer and the utility, and actual knowledge thereof or assent is legally immaterial. Approval by the regulatory body is conclusive on the question of the utility's right to adopt a rule and its reasonableness. . . . [*Id.* at 770; (footnotes omitted).]

■ Under the terms of the tariff, the gas company's employee has a privilege to enter a customer's home to gain access to the gas meter for legitimate company purposes. If the entry is non-forcible, there is no trespass,[5] and as long as the employee does not go beyond his privileged entry, he may not be ejected.[6] That is what, in essence, the trial judge in this case told the jury. Whether the gas company employee said he had come to turn off the gas or whether he said he was there only to read the meter, there would be little difference since either purpose of entry was legitimate, and consequently there was no forcible entry and no trespass. Therefore, unless the employee departed from the legitimate purpose of his entry, appellant was not justified in ejecting him under the guise that he was defending his property.

■ Appellant argues that a company employee must anticipate that under certain circumstances his entry might result in a breach of the peace.[7] This court has said: "However, in the absence of a positive tort, the rule is that the utility's right to discontinue service for failure to comply with its regulations is unaffected by the fact that such an act would result in a foreseeable danger and damage to person or property." *Cullinane v. Potomac Electric Power Company, supra* at 771; (footnotes omitted). Accordingly, it was not reversible error to give the jury instruction at issue here.

### III

■ We disagree, finally, with the premise advanced by appellant for the first time on appeal that it is a violation of due process to fail to provide a hearing before a necessity of life is withdrawn, *i. e.,* before the supply of gas to a customer is discontinued for nonpayment of a gas bill. Appellant cites no authority for this contention.[8] The statute provides for notice to the customer before any such action is taken and there is no statutory violation alleged here. Indeed, appellant's wife had been notified personally several months before the event that service would be discontinued if the bill was not paid. No payment was made and the appropriate remedial action was taken by the company.

The judgments of conviction on appeal are

*Affirmed.*

---

5. *Dobbs v. Northern Union Gas Co., supra.*

6. *Cf. Shehyn v. United States,* D.C.App., 256 A.2d 404 (1969).

7. *E. g., Axman v. Washington Gaslight Co., supra.*

8. The contrary would appear to be the case. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).