NASHVILLE UNION STOCKYARDS, INC., *v.* W. H. GRISSIM.*

*(Nashville.* December Term, 1925.)

1 **FACTORS.** Statute does not require commission company or its agent dealing in live stock on premises of stockyards company to deal only with stockyards company **(U. S. Comp. St. Ann. Supp. 1923, section 8716¼-8716¼z).**

Packers and Stockyards Act 1921 (U. S. Comp. St. Ann. Supp. 1923, section 8716¼-8716¼z), does not require commission company or its agent, engaged in receiving, buying, and selling live stock on premises of stockyards company to do all their business with stockyards company. *(Post, p.* 237.)

Case cited and approved: Stafford v. Wallace, 258 U. S., 513.

2. **CORPORATIONS.** Statute requires stockyards company to furnish service to all dealing in live stock on its premises, on reasonable request, without discrimination, reasonable stockyard services, and to that extent it is a public corporation **(U. S. Comp. St. Ann. Supp. 1923, sections 8716¼-8716¼z).**

Packers and Stockyards Act (U. S. Comp. St. Ann. Supp. 1923, sections 8716¼-8716¼z), imposes on stockyards company duty to furnish to all those engaged in shipping, buying, and selling live stock on its premises, on reasonable request, without discrimination, reasonable stockyard services, and to that extent it is a public corporation. *(Post, pp.* 238, 239.)

3. **INJUNCTION.** Agent of commission company, dealing in live stock on premises of stockyards company, held not trespasser in going on premises to perform his duties as agent.

Agent of commission company, engaged in receiving, buying, and selling live stock on premises of stockyards company as tenant, *held* not a trespasser in going on premises to perform his duties as such agent. *(Post, p.* 239.)

153 Tenn.—15.

4. **INJUNCTION.** Averment that presence of agent of commission company on premises of stockyards company was objectionable and hurtful held insufficient to afford injunctive relief (**U. S. Comp. St. Ann. Supp.** 1923, sections 8716¼-8716¼z).

General averments of bill of stockyards company that presence of agent of commission company, engaged in receiving, buying, and selling live stock on stockyard company's premises for commissions as tenant, was objectionable and hurtful to stockyards company *held* insufficient to afford injunctive relief, in view of Packers and Stockyards Act (*U. S. Comp. St. Ann. Supp.* 1923, Sections 8716¼ 8716¼z). (*Post, p. 239.*)

---

*Headnotes 1. Factors, 25 C. J., Section 7; 2. Corporations, 14 C. J., Section 46 (Anno); 3. Injunctions, 32 C. J., Section 200 (Anno); 4. Injunctions, 32·C. J., Section 533.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. Jas. B. Newman, Chancellor.

Keeble & Seay and Albert W. Stockell, Jr., for complainants.

Gen. W. S. Faulkner, for defendant.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by the Nashville Union Stockyards, Incorporated, hereinafter referred to as complainant, against W. H. Grissim, Jr., hereinafter referred to as defendant, seeking to enjoin him from entering upon the premises of complainant for the purpose

of conducting his business as a commission merchant, or for any other purpose whatsoever other than as a shipper or consignee of live stock to complainant's stockyards for sale.

A preliminary injunction, upon the *fiat* of the chancellor, was issued in accordance with the prayer of the bill.

The defendant answered the bill, after which the complainant, on leave of the chancellor, filed an amendment thereto. This amendment was also answered by defendant, and the cause was thereafter heard by the chancellor upon the original bill, as amended, exhibits thereto, the answers of defendant and exhibits thereto, on the motion of the defendant to dissolve the preliminary injunction theretofore issued. Upon consideration of said motion, the chancellor was of the opinion that the bill was without equity, sustained the motion, dissolved the injunction, and dismissed the bill.

From this decree complainant excepted, prayed and was granted an appeal to this court, and has assigned the action of the chancellor for error.

The original bill alleges:

That complainant is a corporation organized and existing under the laws of the State of Delaware, and has its chief office and place of business in the city of Nashville, Davidson county, Tenn.; that it is engaged in the business of operating and maintaining stockyards in the city of Nashville, and is receiving, handling, feeding, shipping, caring for, reshipping, and transferring live stock of every nature and description, and has been so engaged for a number of years

That the defendant is a commission merchant, engaged in the business of buying and selling live stock, but is not a shipper in the city of Nashville, and has been so engaged exclusively for some time.

That by complainant's permission, and merely as licensees, certain persons, firms, and corporations, who are engaged as commission merchants, are allowed to come upon its premises for the purpose of carrying on their business, most of whom have offices and places of business located on the premises of complainant, but purely as licensees, and by the permission and consent of complainant and not otherwise.

That defendant has not been granted his privilege or license by complainant for reasons satisfactory to itself; that, for reasons satisfactory to complainant, the presence of defendant on complainant's premises is not desirable, is objectionable, and will not be permitted, and no license or permission has or will be given to him to do so, and he has been so notified, but notwithstanding the fact that defendant has been prohibited by express notice from coming upon complainant's premises he is undertaking to do so, and has since being so requested entered upon complainant's premises, and will continue to do so unless enjoined or restrained by injunction; that defendant is a trespasser on complainant's premises without its authority or permission and over its objection; that complainant is advised that its property, being owned by it, is subject to its control, and that it has the right to determine what persons, firms, or corporations it will allow to come upon its premises and transact their personal business as commission merchants, or otherwise,

and that it is under no duty whatsoever to permit any persons whose presence is not desirable to do it.

The prayer of the original bill is as hereinbefore stated.

Defendant's answer to the original bill admits: That complainant is a corporation engaged in the business of operating and maintaining a stockyard in the city of Nashville, and in receiving, handling, feeding, shipping, caring for, reshipping, and transferring live stock of every nature and description. It is further admitted:

That, in connection with its business, complainant is performing the services hereinabove set forth by virtue of the authority granted it under its charter, and, in connection with the common carriers leading into and out of the city of Nashville, it has received live stock for shipment and delivered the same to consignees, receiving freight charges and delivering bills of lading therefor.

That complainant, while a private corporation, is affected and onerated with certain public duties, and as to these duties it is a public corporation; that divers persons, firms, and corporations are engaged in the business of buying and selling live stock on a commission basis on complainant's premises, and are engaged in shipping and reshipping live stock on its premises; that these persons and firms are not only on the premises of complainant operating their respective businesses by and with the permission of complainant, but their presence and businesses are the very life and business of complainant, and the operations of these divers persons and firms is the object of complainant's business for which it was chartered and organized, and complainant furnishes facilities to such persons and firms for handling live stock, for which services it is paid by said persons

and firms; that these services include lotage, feed bills, and other services commonly furnished by stockyard owners engaged in handling live stock for sale; that to this end, not only has complainant become so connected with the common carriers leading in and out of the city of Nashville, but it is almost necessary that live stock being shipped into Nashville shall pass through and over the premises of complainant, complainant having practically the only unloading facilities for live stock in the city of Nashville, and it is practically impossible to ship or receive live stock to and from Nashville, and into other States, without carrying them through complainant's premises; that by virtue of complainant's long course of dealing with the persons and firms engaged in buying and selling live stock on complainant's premises, in the way and manner hereinbefore stated, complainant has rented offices on its premises to a number of such persons and firms, from which they carry on their respective businesses.

The answer denies that defendant is a commission merchant carrying on, in his own right, such business upon complainant's premises; that J. D. Bolling & Co., regularly licensed commission merchants of the city of Nashville, under contract with complainant, occupied one of its offices, and are and have been engaged in the business of buying, selling, receiving, and shipping live stock through and over the premises of complainant; that defendant is the employee of J. D. Bolling & Co., and has only entered upon the premises of complainant as such employee, and such business as he has done on the premises of complainant has been done only as the agent and employee of J. D. Bolling & Co.; that under his

contract with J. D. Bolling & Co., and as their agent, he is entitled to assist said J. D. Bolling & Co. in carrying on their business on complainant's premises, and he denies the right or authority of complainant to interfere with him in the performance of his duties as such agent, or to prevent him from entering upon said premises for the purpose of performing his duties as such employee and agent; that such acts as he performs on complainant's premises are the acts of his employer, J. D. Bolling & Co., and not otherwise; that, in the performance of his duties as the agent and employee of J. D. Bolling & Co., he has at all times demeaned himself properly while upon complainant's premises, and has given it no reason to complain that his presence on its premises, as such agent and employee, is objectionable and will not be permitted; that the broad and indefinite charge that he has not done so is meaningless and cannot serve complainant as a basis for his exclusion; that he will ask that the temporary injunction heretofore granted and issued be dissolved; and to this end the answer is sworn to, stating that the averments contained therein are true.

In its amendment to the original bill complainant alleges, among other things, that the defendant is engaged in the conduct of a business on its premises on his own responsibility, and that there is some sort of an arrangement between defendant and J. D. Bolling & Co., with regard thereto, the exact nature of which complainant is not able to definitely state, but it will be shown on the hearing; that complainant has the right to give or withhold from defendant its permission to enter upon its premises, and that such permission, privilege, or license can be denied him without the assignment of any reason

therefor. Nevertheless complainant would show to the court that, as to defendant, complainant's objection to his coming upon its premises is not a matter of caprice, but comes from the fact that the defendant is undertaking to and is doing acts and things which are hurtful and injurious to complainant's business as the owner and operator of said stockyards; that he had abused the license which he has been enjoying, and has used this license or privilege for the purpose of enabling him to divert business from complainant to others, and to prevent the shipment of live stock to complainant's yards; that by taking advantage of information which he has secured by reason of said license or privilege to come upon complainant's premises for the transaction of business he has, after securing such information, gone out and bought live stock himself, or has caused others to do so, and caused such live stock to be shipped to points other than Nashville, or, if the shipment were consigned to Nashville, it was so consigned that complainant would be denied the right to handle same, and that this causes complainant great loss, injury and damage; that therefore defendant cannot, as such licensee, nor can he as an employee of J. D. Bolling & Co., have the right to continue to enter upon complainant's premises over its objection and against its protest; and that complainant is within its right, and has the authority under the law and the circumstances and conditions stated to exclude defendant from its premises altogether.

Defendant answered this amendment to the original bill, denying its material allegations, and especially its allegations hereinbefore set out.

The answer is sworn to, and the affidavit states that the averments contained therein are true.

It is conceded that complainant is subject to and is governed by the provisions of the Packers and Stockyards Act passed by Congress in 1921 (Comp. St. Ann. Supp. 1923, sections 8716¼-8716¼z; Fed. Stat. Ann. 1921 Supp. pp. 287-301).

The validity of this act was upheld in *Stafford* v. *Wallace,* 42 S. Ct., 397, 258 U. S., 513, 66 L. Ed., 735, 23 A. L. R., 229. It regulates the business of packers done in interstate commerce, and forbids them to engage in unfair, discriminatory, or deceptive practices in such commerce, or to subject any person to unreasonable prejudice therein, or to do any of a number of acts to control prices or establish a monopoly in the business of handling, receiving, buying and selling live stock in commerce. It constitutes the secretary of agriculture a tribunal to hear complaints and make findings thereon, and to order the packers to cease any forbidden practice. An appeal is given to the circuit court of appeals from these findings and orders. The provisions of the act are to be enforced by the district court by penalty if not appealed from and if disobeyed. Title 3 concerns the stockyards and provides for the supervision and control of the facilities furnished therein in connection with the receipt, purchase, sale, on commission basis or otherwise, of live stock, and its care, shipment, weighing, or handling in interstate commerce. A stockyard is defined to be a place conducted for profit as a public market, with pens in which live stock are received and kept for sale or shipment in interstate commerce. Yards with a superficial

area of less than twenty thousand square feet do not come within the act.

Among other things, said act provides:

"Sec. 301a. The term 'stockyard owner' means any person engaged in the business of conducting or operating a stockyard;

"b. The term 'stockyard services' means services or facilities furnished at a stockyard in connection with the receiving, buying or selling on a commission basis or otherwise, marketing, feeding, watering, holding, delivery, shipment, weighing, or handling, in commerce, of live stock;

"c. The term 'market agency' means any person engaged in the business of (1) buying or selling in commerce live stock at a stockyard on a commission basis or (2) furnishing stockyard services; and

"d. The term 'dealer' means any person, not a market agency, engaged in the business of buying or selling in commerce live stock at a stockyard, either on his own account or as the employee or agent of the vendor or purchaser."

By section 303 it is provided: "After the expiration of thirty days after the secretary has given public notice that any stockyard is within the definition of section 302, by posting copies of such notice in the stockyard, no person shall carry on the business of a market agency or dealer at such stockyard unless he has registered with the secretary under such rules and regulations as the secretary may prescribe, his name and address, the character of business on which he is engaged and the kinds of stockyard services, if any, which he furnishes at such stockyard. Whoever violates the provisions of this sec-

tion shall be liable to a penalty of not more than $500 for each such offense and not more than $25 for each day it continues, which shall accrue to the United States and may be recovered in a civil action brought by the United States.''

By section 304 it is provided: ''It shall be the duty of every stockyard owner and market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard.''

By section 305 it is provided: ''All rates or charges made for any stockyard services furnished at a stockyard by a stockyard owner or market agency shall be just, reasonable, and nondiscriminatory, and any unjust, unreasonable, or discriminatory rate or charge is prohibited and declared to be unlawful.''

By section 306 it is provided that the stockyards owner and every market agency at the stockyards shall file with the secretary of agriculture and post all rates and charges for stockyards services furnished by such person, and no change can be made in these schedules except upon ten days' notice to the secretary. Said section provides for hearings concerning the lawfulness of rates, charges, etc., and prohibits the carrying on of the business of a stockyard owner or market agency unless the rates and charges for such services have been filed and published in accordance with the act, and the orders of the secretary of agriculture made thereunder. By said section it is further provided that the stockyard owner or market agency shall not—''charge, demand, or collect a greater or less or different compensation for such services than the rates and charges specified in the schedules filed and in effect at the time; . . . nor extend to any

person at such stockyard any stockyard services except such as are specified in such schedules."

Through its assignments of error complainant insists that the court erred in dissolving the preliminary injunction granted and issued against defendant in holding the bill to be without equity, and in dismissing it at complainant's costs.

It will be noted that J. D. Bolling & Co., in whose employ defendant is, is not made a party defendant to the bill, and no complaint is made by complainant against J. D. Bolling & Co., notwithstanding that it indisputably appears that defendant, in doing such acts as he is doing upon complainant's premises, is acting as the agent of J. D. Bolling & Co., and in their behalf; that the bill does not allege any specific acts of misconduct against defendant as the agent of J. D. Bolling & Co., but the allegations of the bill on this point are only in general terms, and these general allegations are emphatically and positively denied by defendant's answer.

It is not alleged in the bill that it is the business of J. D. Bolling & Co. to furnish suitable stockyard services to shippers, buyers, sellers, and handlers of live stock in complainant's yards upon reasonable request, without discrimination, as required by the Packers and Stockyards Act of 1921, nor is it alleged that it is the duty of J. D. Bolling & Co. to furnish such services under the act referred to.

The answer of defendant expressly denies that he is engaged in the performance of any acts upon complainant's premises except acts performed for J. D. Bolling & Co. in the course of their business, and as their agent only; and, as before stated, J. D. Bolling & Co. is not

made a party defendant to the bill, and no complaint is made against them in the bill. The bill, it would seem, seeks to exclude the defendant from complainant's premises on the general and vague allegation that, for reasons satisfactory to itself, the presence of defendant on its premises is not desirable and is objectionable; that he being a mere licensee, which license is revocable at any time, it has the right to exclude him; and upon the further general and vague allegation, contained in the amendment to the original bill, that he is committing acts hurtful and injurious to complainant's business, and has abused the license which he has been permitted to enjoy by taking advantage of information which he has received on complainant's premises while enjoying this license, which enabled him to go out and buy live stock for himself, or cause others to do so, and cause such stock to be shipped to points other than Nashville, and, if shipped to Nashville, have them so consigned that complainant would be denied the privilege of handling them, thereby causing complainant loss and injury.

As before stated, defendant's answer emphatically and positively denies these general allegations. Furthermore, we fail to find anything in the Packers and Stockyards Act that requires defendant or his employer to transact all of their business of receiving, buying, and selling live stock on complainant's premises, or from buying live stock and causing the same to be shipped to others than complainant. In other words, there is nothing in the act which requires J. D. Bolling & Co., or their agent, the defendant, to do all of their business with complainant; and no such contract is alleged in the bill.

By section 301a of the act complainant is defined as a stockyard owner. By section 304 of said act it is made the duty of complainant to furnish to those engaged in shipping, buying, selling, and handling live stock on its premises upon reasonable request, without discrimination, reasonable stockyard services. This is a duty which the act imposes upon complainant, which it is bound to perform, and this is true as to all shippers, buyers, sellers, and handlers of live stock on and through its premises. To this extent it is a public corporation, and these duties cannot be disregarded.

It is insisted by counsel for complainant that defendant nor his employer falls within the class of persons to whom it is required to furnish reasonable stockyard services at its stockyards, and the defendant is not demanding such stockyard services, but is claiming the right to enter upon the premises of complainant for the purpose of giving, or to assist in giving, such services. In other words, he is claiming a right which is not available to him under any law, common or statutory.

The bill does not so aver, and the answer states specifically, that defendant is only engaged in assisting his employer, J. D. Bolling & Co., in the conduct of their business, and, under the allegations of the bill, J. D. Bolling & Co. is engaged in receiving, buying, and selling live stock on complainant's premises for commissions, occupies an office on complainant's premises, and is a tenant of complainant; and no complaint is made of them as to the manner of conducting their business on complainant's premises.

Complainant cites numerous authorities which hold that a public service corporation owes no duty to the

public as to the particular agencies it shall select for the performance of its duties, and, so long as the public is served, it is a matter of no importance who serves it.

These authorities are not in point. As before stated, the bill does not allege that defendant is attempting to perform any services for complainant. The answer specifically avers that defendant is merely the employee and agent of J. D. Bolling & Co., and is only engaged in assisting them in carrying on their business on complainant's premises, J. D. Bolling & Co. certainly have the right to employ agents to carry on their business, or to assist them in carrying it on. J. D. Bolling & Co. being rightfully on complainant's premises for the conduct of their business, it cannot be held that defendant was a trespasser in going on complainant's premises to perform his duties as the agent of J. D. Bolling & Co.; and the general averments of the bill that his presence on complainant's premises is objectionable and hurtful are not sufficient to afford complainant injunctive relief.

We therefore think the injunction was properly dissolved and the bill dismissed at complainant's costs, and the chancellor's decree will be affirmed, and the cause is remanded to the chancery court for a reference as to damages, if any, sustained by defendant as a result of suing out the injunction.