## FORT WORTH STOCKYARDS CO. v. BROWN et al.

No. 14354.

Court of Civil Appeals of Texas.
Fort Worth.

April 3, 1942.

Rehearing Denied May 1, 1942.

Cantey, Hanger, McMahon, McKnight & Johnson and W. D. Smith, all of Fort Worth, for appellant.

John L. Poulter, of Fort Worth, for appellees.

SPEER, Justice.

This suit was instituted in a district court of Tarrant County by plaintiff Fort Worth Stockyards Company against defendants Lee Brown, J. L. Elkins, Glenn Green, J. V. Norris, Harry Jameson and W. O. Sliger. Plaintiff sought and was denied injunctive relief against the defendants, and has appealed from the judgment so entered. Parties will be designated here as they were in the trial court.

Insofar as is necessary to pass upon the points presented in this appeal, it is sufficient to state that plaintiff's suit was predicated upon allegations that it was duly incorporated under the laws of Virginia and had a permit to do business in Texas; that it had for many years maintained and operated stockyards on its own 40-acre tract of land in what is known as North Fort Worth, Texas; that in connection

with and as an essential part of its said business, it maintained receiving pens, docks, and facilities for watering, feeding, conditioning and preparing for sale all classes of livestock, brought to said market from Texas and the whole southwest; that its facilities were adequate to accommodate the said trade territory; that a large number of reliable commission firms and marketing agencies were duly registered and licensed under the terms and provisions of the Packers and Stockyards Act of the United States Government, 7 U.S.C.A. § 181 et seq., who are constantly available on said stockyards market to purchase and by competitive bidding, furnish to the owners of livestock the best and highest market values therefor. That plaintiff, at its own expense, had heretofore constructed, paved and had subsequently at all times maintained, for its own and the use of the public doing business with it, a continuation of Exchange Avenue extending east and west across its said property. That south of said Exchange Avenue, it had constructed and maintained its pens, docks and equipment for handling shipments of sheep, hogs, horses and mules; that it had prepared an archway entrance on the south side of Exchange Avenue to an alley-way or drive 50 or 60 feet in width extending south about 600 feet leading to its said hog and sheep docks and pens, also as an approach to its horse and mule barns; the said horse and mule barns having been leased by it for many years to persons engaged in buying and selling such livestock; that the south end of said alley-way opened into a public street of the City of Fort Worth.

Allegations were made to the effect that plaintiff's means of revenue came from yardage fees paid by the owners of livestock brought to said market, and for services rendered by it in connection with stock while in the pens prior to the time of sale and delivery for slaughter or reshipment. That defendants, against the will and over the protests of plaintiff, persisted in going onto plaintiff's property in said alley-way which leads to plaintiff's pens and docks, and there accost drivers of trucks and loads of livestock on their way to plaintiff's pens, stopping said trucks and trailers in said drive-way and often buying said livestock before they reached plaintiff's pens; that when said trucks and trailers were so stopped it caused a congestion of traffic and endangered life and property, since several hundred such trucks and trailers passed through said drive-way each day; that when defendants succeeded in buying said livestock from drivers of said vehicles, plaintiff was deprived of the revenue it would have received for yardage at its docks, and that in many instances defendants then and there, in the midst of all said traffic and customers on their way to plaintiff's docks, would unload said livestock from the original owners' trucks and trailers to those of defendants, thereby stopping traffic and increasing the inconvenience to plaintiff and its customers and patrons.

There are other allegations by plaintiff in substance that defendants were not registered or licensed marketing agencies or representatives of such, that they were not bonded and were trespassers on plaintiff's premises; that their conduct in the matters complained of brought criticisms and unfavorable comment from those who desired to patronize plaintiff as a stockyards market. That the marketing agencies permitted by the U. S. Department of Agriculture, registered and bonded and licensed by the U. S. Secretary of Agriculture, as provided by law, have heretofore, as required by said department, bound and obligated themselves in writing not to sell, barter or offer to sell, barter or make other deals for livestock on plaintiff's premises except after the livestock are placed in plaintiff's pens and are made ready for inspection and sale; that the defendants refused to enter into such agreements and practices, but continued to come onto plaintiff's said premises and by their conduct as set out, are in unfair competition to those marketing agencies regulated and controlled by the U. S. Department of Agriculture, and materially interfere with plaintiff in its orderly and legitimate business of conducting a livestock market place. That defendants' course of conduct in the past and that threatened to be continued in the future is an unlawful appropriation by them of plaintiff's rights in its said property and is an illegal interference with plaintiff's free use and enjoyment of its said private property. That plaintiff had no full, fair and complete adequate remedy at law for the protection of its said property and its rights therein, and prayed for an injunction against each and all of the defendants restraining them from doing the things complained of. The petition was duly verified and upon presentation to the court a

show-cause order was entered and defendants accordingly were so notified.

Defendants replied with general denials and specially denied under oath that they were guilty of the acts complained of by plaintiff. By way of special defenses it was alleged in adequate terms, (1) that plaintiff should not recover against defendants Brown and Elkins because by a judgment of the district court rendered on May 23rd, 1938, all matters now in controversy were fully adjudicated against the contentions of plaintiff, and (2) because the alley or drive-way leading south from Exchange Avenue to plaintiff's said pens and docks, where it is claimed defendants bought and sold livestock, is a public thoroughfare leading from said Exchange Avenue to East Twenty-third Street, and had been constantly so used by the general public, with the knowledge and consent of plaintiff for more than thirty years. That independent traders like defendants have continuously used said drive-way for a place to buy, trade and sell livestock for many years without complaint upon the part of plaintiff and with its actual knowledge and acquiescence.

The judgment entered recites that plaintiff is denied the injunction prayed for and that defendants recover their costs. Exception and notice of appeal appear at the conclusion of the judgment.

The testimony in this case is contained in a volume of about 400 pages and obviously only the substance of that material to points raised need be referred to. Taken as a whole, it is undisputed that plaintiff is a public stockyards company operating under the federal Packers and Stockyards Act, equipped and doing business as alleged; that it owned all of the lands used by it in connection with its business; that the alley or passage way south from Exchange Avenue is about 600 or 700 feet long and for a number of years led to a vacant or open space at its south end, passing the docks and pens of plaintiff prepared and maintained for handling hogs and sheep; also passing the horse and mule barns leased by plaintiff to tenants; that in 1937 plaintiff filled an old creek bed at the south end of this alley-way and extended it so as to connect with Twenty-third Street, to relieve traffic in its driveway or alley-way leading to the barns, docks and pens. That a district supervisor from the U. S. Department of Agriculture made his headquarters in Fort Worth and visited plaintiff's property frequently, and in conjunction with plaintiff's superintendent, endeavored at all times to promulgate rules and regulations conducive to the best and most orderly manner of handling the business coming to plaintiff as a stockyards company. That all buying agencies on the market were required to register with the department, to make necessary bonds and procure a license as such buyers or agencies; that constant efforts were made over a period of several years, by said district superintendent named by the U. S. Department of Agriculture and the plaintiff's superintendent to prevent either licensed or unlicensed buyers from purchasing livestock on plaintiff's said alley-way and approaches to the docks and pens. Reasons given for such regulations being in substance that it was to the best interest of the livestock business in the area served to regulate and control the mixing of livestock from widely separated areas, and because individual traders on parts of the premises not designated as that for purchase and sale of said livestock did not contribute to the best results in favor of those bringing their livestock to the market. The defendants each admitted that they were not registered or licensed buyers and that they had continuously traded on said premises at the times, places and in the manner complained of by plaintiff.

As we view this record, the trial court committed reversible error in denying plaintiff the injunctive relief sought. Plaintiff presents its contentions of why it should have had its writ of injunction in five points, all of which are discussed together, and we shall content ourselves to do likewise.

Apparently the only conflict in the testimony is to the effect that while defendants did not come within the class of marketing agencies, or their representatives, as defined by the federal Act, and as regulated and controlled by the district superintendent of the U. S. Department of Agriculture, they claim they were lawfully upon the premises to pursue their trade, for two reasons: (1) Because of the long and uninterrupted custom, and (2) because the alley or drive-way upon which they operated had been used so long by the public that it was dedicated by plaintiff for public uses, and thereby became a public thoroughfare upon which they had a vested right to operate.

As indicated, the conflict in the testimony was one as to whether or not the acquiescence of plaintiff in defendants' prior operations licensed them to continue their acts and whether or not the use of plaintiff's private property amounted to a dedication by it to public use as a thoroughfare.

The whole record indicates conclusively that plaintiff was a public stockyards company, organized and operated under the terms and provisions of the U. S. Packers and Stockyards Act of 1921, and subsequent amendments thereto. The material parts of the Act are found in 7 U.S.C.A. § 181 et seq.

It is true, of course, that plaintiff's business was in its nature public where it invited all persons in the area served to come upon the premises for the purposes of penning, feeding and preparing for market their livestock, either for sale, slaughter or shipment to other parts of this or any other state.

It is also true as established by the uncontradicted evidence that plaintiff owned, kept and maintained the alley or drive-way for the purpose of enabling its customers and patrons to drive their trucks and trailers containing livestock to its unloading docks and pens—there was no other means of approach. Without the driveway its facilities for doing business were useless to it. It was also an undisputed fact that under the rules and regulations prescribed by the district supervisor named by the U. S. Department of Agriculture and plaintiff's superintendent, only regularly licensed and bonded marketing agencies or their representatives were invited to buy or sell livestock on said premises, and then only at the docks and pens of plaintiff. Neither of the defendants was so registered, licensed or bonded, nor did the acts complained of by plaintiff take place at the docks and pens, but out in the driveway at times before patrons of plaintiff had unloaded their stock in plaintiff's pens; resulting in the financial losses and inconveniences complained of.

▮ Plaintiff's right of ownership and enjoyment of its property extended not only to its docks and pens, but to all of its premises used and maintained by it in connection with its business. An invitee on plaintiff's premises could not acquire a vested right in plaintiff's property and its enjoyment to the exclusion of plaintiff. Defendants were neither licensees nor invitees on the premises at the points and places where they are charged with having abused plaintiff's rights; they were never more than permittees. Granting to defendants all the rights they may have acquired as such permittees on the premises, the permission given by plaintiff, either expressed or implied, was subject to plaintiff's revocation at its option. There is no contention made here by defendants that such uses as they have heretofore put to the alley-way of plaintiff were hostile to the rights of plaintiff in its full, free and uninterrupted enjoyment; but carried far enough it may be said that if the uses to which defendants claim the right of use of plaintiff's property should become profitable enough to others, it is perceivable that its entire appropriation could be claimed by defendants and those choosing to follow the same practices.

▮ Analogous in many respects to the situation before us is the rule announced by the Commission of Appeals in Phillips v. Texas & Pacific R. Co., 296 S. W. 877, where it was claimed that a permissive right to cross one's premises for a long period of time gave a prescriptive right or easement. It was held that to create such a prescriptive right the public use must be exclusive of the private uses of the owner. To the same effect are the holdings in Ladies' Benevolent Society of Beaumont v. Magnolia Cemetery Co., Tex. Civ.App., 268 S.W. 198, affirmed by Supreme Court in 288 S.W. 812. In Boone v. City of Stephenville, Tex.Civ.App., 37 S.W.2d 842, in which many authorities are cited, it was held that to support the presumption of a dedication for public use by the owner of land, such use must be for the necessary period of time and also must be of a nature which is adverse to the rights of the owner under a claim of right. At page 844 of 37 S.W.2d it was there said: "The adverse claim is the very foundation of the right. Use, with the permission of the owner, will never ripen into prescription." Citing authorities. The same rule is announced in West v. City of Houston, Tex. Civ.App., 163 S.W. 679; Nave v. City of Clarendon, Tex.Civ.App., 216 S.W. 1110. In 44 C.J. 887, § 3605, a similar rule is announced in this language: "Where land owner retains dominion over the land, a mere permissive use under a license from

him will not establish a prescriptive right thereto by the public." Cases from this jurisdiction are cited in support of the statement.

█ The trial court could have found from the testimony in this case that plaintiff had either given permission or had acquiesced in the acts of others than defendants in selling and buying on its premises where defendants are charged to have bought and sold; but as we view the law such a fact finding would not, as a matter of law, preclude plaintiff from determining who may and who may not transact business on its premises. This we believe to be true even though plaintiff's business is of general public nature. Plaintiff should always be accorded the right to the exclusive use by it or by those chosen by it, to use and enjoy its premises.

██ Redland Fruit Co. v. Sargent, 51 Tex.Civ.App. 619, 113 S.W. 330, 332, involved the validity of a contract made by the owner with another to sell certain articles on the premises and subsequently the owner sold to another a similar privilege; it was held: "The right to sell upon the premises of another is not given by law, but by consent of the owner. The latter has the right to say who shall or who shall not use his premises for any such purpose." Similar situations have arisen in contracts between railroad companies and haulers of baggage of through passengers on more than one line of railway. In Clisbee v. Chicago R. I. & G. R. Co., Tex.Civ.App., 230 S. W. 235, writ refused, the railway company transported passengers over its line and that of another, contracting to transfer the passengers' baggage at the point of the connecting lines. The railway company contracted with one transfer company to carry all baggage contracted by the railway company from one station to the other, and a competing transfer company was enjoined from coming onto the premises of the railway company for the purpose of interfering with the rights conferred on the other transfer company. It was there also held, as applicable to the point before us, that although the nature of the railway company's business was public, yet its right of way and premises are its private property and that it has a right in its use and enjoyment, insofar as the public is concerned, when not transacting business with it, to appropriate those uses in such way that it believes most advantageous to its own interest. The same doctrine is announced in Fort Worth & Denver City R. Co. v. White, Tex.Civ. App., 156 S.W. 241, writ refused. To deny plaintiffs their remedy by injunctive relief in this case occurs to us, equivalent to permitting defendants to appropriate a valuable right in property belonging to plaintiff without due process of law, in violation of Art. 1, Section 19, of our State Constitution, Vernon's Ann.St. To award such right to defendants in this case would be to deprive plaintiff of its own uninterrupted use of its property which is to deprive it of the property itself.

█ In support of the judgment defendants urge here that since plaintiff alleged that it was a Virginia corporation with a permit to do business in Texas, and that no proof was offered by plaintiff that it held such permit, it failed to prove its allegations and therefore no judgment could be rendered in its favor. Under the facts of this case we think there is no merit in the contention. The basis for defendants' contention is founded upon Art. 1536, R.C.S., Vernon's Ann.Civ.St. art. 1536. The provisions of that article are only applicable to cases involving intrastate commerce. Continental Supply Co. v. Hoffman, 135 Tex. 552, 144 S.W.2d 253. This entire record reflects that plaintiff was organized and was operated under the Packers and Stockyards Act, a federal law for handling interstate commerce. Defendants admit in their brief that such concerns as plaintiff's are classed as interstate commerce agencies. Defendants cite and rely upon the case of Nashville Union Stockyards, Inc., v. Grissim, 153 Tenn. 225, 280 S.W. 1015. We have carefully studied the holdings there and it is disclosed that injunction was denied upon grounds and facts not in the instant case at all. However, the same case, in construing the Packers and Stockyards Act, holds that a stockyard so organized is a place conducted for profit as a public market in handling livestock for interstate commerce markets. In view of what we have said in this connection, plaintiff's allegation that it had obtained a permit to do business in Texas need not be proved but may be ignored and treated as surplusage. Oklahoma Tool & Supply Co. v. Daniels et al., Tex.Com.App., 290 S.W. 727; Barton v. Kansas City Life Ins. Co., Tex.Civ.App., 98 S.W.2d 836.

█ Defendants Brown and Elkins interposed the plea of res adjudicata based upon the institution of a suit by plaintiff against them in 1937 seeking an injunction

against them for similar acts to those charged against them in this suit. Only the judgment of the court in the former suit is before us and from the judgment which denied the permanent injunctive relief sought by plaintiff, it is recited, in effect, that since the institution of the suit the U. S. Department of Agriculture, acting through its commissioner, had put into effect rules and regulations controlling the acts of said defendants, about which plaintiff complained, and that by reason thereof plaintiff's said cause of action had become moot, and for that reason denied the relief sought by plaintiff. But even if it could be said that defendants' plea was well taken, based on that judgment which became final, whether correct or incorrect, plaintiff would not be denied relief in this suit for the subsequent acts of defendants. The plea of res judicata is in its nature an estoppel against the losing party from again litigating the matters involved in the previous action, but in its very nature would not have that effect as to matters transpiring subsequently. The evidence in this case indisputably shows that these two defendants are doing the identical acts which they now claim they were doing prior to the former suit. In 34 C.J. 905, this rule is announced: "The estoppel of a judgment extends only to facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same questions between the same parties, where in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the litigants." We therefore conclude that the plea of the two named defendants is not applicable to the facts before us.

 Again in support of the judgment entered defendants urge that plaintiff was not entitled to injunctive relief because by and under the terms and provisions of the Packers and Stockyards Act, the Commissioner of Agriculture was fully empowered to regulate and control all marketing agencies, their representatives, as well as independent buyers such as these defendants, and that by an enforcement of those rules and regulations through said Commissioner and his representatives, plaintiff had its adequate remedy at law without resorting to the harsh remedy of the equitable writ of injunction. With this contention we cannot agree. There is no Penal Code provision in this state against trespass and it can make no difference even though the defendants were amply able to respond in damages for the trespasses charged against them on plaintiff's property, such is not considered in law an adequate remedy for the appropriation by one of another's property, to the owner's detriment. Gulf, C. & S. F. R. Co. v. Puckett, Tex.Civ.App., 82 S.W. 662; 24 Tex.Jur. pp. 80, 81, § 58. Another all-sufficient answer to defendants' contention in this connection is found in subdivision (b) of Sect. 308 of the Packers and Stockyards Act, 7 U.S.C.A. § 209(b), where it is provided that the enforcement of all said rules and regulations may be either by the Secretary of Agriculture or by the district courts of the United States having jurisdiction of the parties and subject matter, but: "This section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

 For the reasons hereinabove set out, we hold that plaintiff has shown itself entitled to the relief sought, and that the trial court should have issued its writ of injunction restraining defendants from doing the acts complained of in the petition, and that no question of fact determined by the trial court was such as to alter the question of law involved. The facts were fully developed and as we view them are without substantial dispute or controversy. We therefore reverse the judgment of the trial court and here enter judgment that defendants be perpetually enjoined from entering upon the premises of plaintiff to pursue the acts complained of at the times, places and in the manner alleged in plaintiff's petition. Judgment reversed and rendered for plaintiff.