241 F.2d 192
 PRODUCERS LIVESTOCK MARKETING ASSOCIATION, a corporation of
Salt Lake City, Utah, Petitioner,
v.
UNITED STATES of America and Ezra Taft Benson, Secretary of
Agriculture, Respondents, Denver Union Stockyard
Company, Intervenor-Respondent.
 No. 5459.
 United States Court of Appeals Tenth Circuit.
 Feb. 15, 1957.
 
 Hadlond P. Thomas, Salt Lake City, Utah (Frank Armstrong, Edward M. Garrett and Thomas & Armstrong, Salt Lake City, Utah, were with him on the brief), for petitioner.
 Neil Brooks, Washington, D.C. (J. Stephen Doyle, Jr. and Donald A. Campbell, Washington, D.C., were with him on the brief), for respondents United States and Secretary of Agriculture.
 Winston S. Howard, Denver, Colo. (Dawson, Nagel, Sherman & Howard Denver, Colo., Ashley Sellers, Jesse E. Baskette, Cummings, Sellers, Reeves & Conner, Washington, D.C., were with him on the brief), for intervenor Denver Union Stockyard Co.
 Before HUXMAN, PICKETT and LEWIS, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 This is a proceeding brought by petitioner under the Hobbs Act[1] seeking review of an order of the Secretary of Agriculture made under the Packers and Stockyards Act of 1921, 42 Stat. 159 as amended, 7 U.S.C.A. 181 et seq.[2] Petitioner is a 'marketing agency' as defined by the Act and has its principal office at Salt Lake City.[3] The United States is named respondent pursuant to statute[4] and the Secretary of Agriculture by rule of this court.[5] The Denver Union Stockyard Company is a 'stockyard owner' as defined by the Act and has intervened as a party in interest upon motion, and as a matter of right.[6]
 
 Section 307 of the Act[7] provides:
 
 2
 'It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful.'
 
 
 3
 Under the purported authority of this section the stockyard company did on May 11, 1955, issue the following Regulation 10(c) contained in its 'Tariff No. 14':
 
 
 4
 'Item 10.
 
 
 5
 'Interference With Operations
 
 
 6
 '(a) * * *
 
 
 7
 '(b) * * *
 
 
 8
 '(c) No market agency or dealer engaging in business at this Stockyard shall, upon Stock Yard Company property, or elsewhere, nor shall any other person upon Stock Yard Company property-
 
 
 9
 '(1) Solicit any business for other markets, for sale at outside feed yards or at country points, or endeavor to secure customers to sell or purchase livestock elsewhere; or
 
 
 10
 '(2) In any manner divert or attempt to divert livestock from this market which would otherwise normally come to this Stock Yard; or
 
 
 11
 '(3) Engage in any practice or device which would impair or interfere with the normal flow of livestock to the public market at this Stockyard.
 
 
 12
 'The normal marketing area from which livestock would normally come to the public market at this Stockyard, and which is the area to which this subdivision (c) shall apply, is defined as all of the State of Colorado except that part listed as follows:
 
 
 13
 'The area lying east of the line beginning with the westerly boundary of the County of Sedgwick where it intersects the Nebraska state line; thence south along the county line of Sedgwick and Phillips counties; thence west and south along the western boundary of Yuma county to its intersection with U.S. Highway 36; thence west to Cope and south along Colorado Highway 59 to Eads, Colorado; thence westerly along Highway 96 to Ordway; thence south on Highway 71 to Timpas; thence southwesterly via Highway 350 to Trinidad; thence south to New Mexico state line.
 
 
 14
 'The provisions of paragraph (c) do not apply on livestock solely used for breeding purposes.'On July 7, 1955, the petitioner herein challenged the validity of the regulation by filing a complaint[8] with the Secretary of Agriculture to which the stockyard company answered. The elaborations of complaint and answer need not be set forth for purposes of present inquiry except to state that the status of petitioner and intervenor are admitted together with the issuance of the regulation attacked. At the hearing set before the judicial officer of the Department of Agriculture petitioner elected to rest without offering evidence, choosing to submit its case upon the sole ground that the regulation was invalid as a matter of law, illegal upon its face. The judicial officer, acting for the Secretary of Agriculture, ruled that the regulation was not invalid upon its face; that absent factual support relative to the potential or actual effect of the provisions of the regulation upon petitioner and the stockyard company he could not adjudicate whether the regulation would have a valid or invalid application; and dismissed petitioner's complaint. Aggrieved by the result and facing expulsion from the Denver yard upon violation of the regulation, petitioner seeks this review.
 
 
 15
 Being a public utility[9] the stockyard company has the inherent right to adopt regulations in regard to those phases of its business which are secondary to its major functions. Certain it is that the utility may prescribe rules for the conduct of its business and for its own protection from fraud or injury and may adopt and enforce reasonable and nondiscriminatory regulations to that end.[10] Such right is not necessarily dependent upon statutory authority. But a regulation the effect of which is to govern not only the services rendered by the stockyard company but also services provided by a marketing agency and which, if disobeyed, will divorce the two, can be lawful only if issued in furtherance of the basic duty established by sec. 304 of the Act which provides:
 
 
 16
 'It shall be the duty of every stockyard owner and market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard * * *.'
 
 
 17
 Our inquiry is thus limited to a determination of whether or not the proposed regulation has any possible lawful application to the statutory duties imposed upon the stockyard company and the marketing agency 'to furnish reasonable stockyard services.' Stated more specifically: Does a stockyard company, in order to furnish reasonable stockyard services, have a right to restrict, by regulation, the diversion of the normal flow of livestock to its yard occasioned by any act of a marketing agency done within the normal marketing area of the yard?
 
 
 18
 It is the position of the stockyard company, adopted at least in part by the Secretary, that the question so raised could not be determined without a 'full hearing' with presentation of evidence on both sides in accordance with Sec. 310 of the Packers and Stockyards Act and the regulations 9 C.F.R. 202.11(a) and 9 C.F.R. 202.2(g). At such a hearing, so says the stockyard company, it intended to and would show that Regulation 10(c) was reasonable and necessary to prevent market agencies in the position of petitioner from undermining the business and public efficiency of the yard by the solicitation of business for other yards.
 
 
 19
 Although 9 C.F.R. 202.2(g) defines 'hearing' to be 'that part of the proceeding which involves the submission of evidence', it is fundamental to the law that the submission of evidence is not required to characterize 'a full hearing' where such evidence is immaterial to the issue to be decided. In construing a similar provision of the Interstate Commerce Act,s 49 U.S.C.A. 1 et seq., the Supreme Court has defined a full hearing as one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice and law, of the step asked to be taken. Akron, C. & Y. Ry. Co. v. United States, 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605. Where no genuine or material issue of fact is presented the court or administrative body may pass upon the issues of law after according the parties the right of argument. This was done in the instant case and constitutes a 'full hearing' for consideration of the limited contention made by the petitioner in its complaint and by its election not to submit evidence.
 
 
 20
 The most casual study of Regulation 10(c) shows the intent and effect of the rule to be an attempt to safeguard what the stockyard considers its normal market. Marketing agencies are not prohibited from dealing elsewhere entirely but are denied the services of the Denver yard if they even 'endeavor to secure customers (within the prohibited geographic area) to sell or purchase elsewhere) than the Denver yards. The compulsion of the regulation is in immediate conflict with the requirement of Sec. 304 which contemplates and imposes the duty upon marketing agencies to render reasonable services to their customers at every stockyard where they do business. If by rendering a reasonable service for a Colorado customer at one stockyard a marketing agency is prohibited from rendering reasonable service for the same or a different Colorado customer at another stockyard it is apparent that the agency cannot perform its statutory duty in one regard or another.
 
 
 21
 Although it may be argued that attempts, successful or otherwise, by a marketing agency to divert business from a stockyard may result in disharmony between the parties and thereby lower the ability of both to render efficient service, still such argument, even if proved to be soundly based in fact, has no legal significance. The test of the validity of the regulation is not so dependent. Nor does the stockyard have the right to exclude from its yards those persons who lawfully trod upon its economic toes. The operation of a stockyard is affected with a public interest and devoted to a public use. Any properly exclusionary regulation must be based upon more than economic or personal desirability or its lack, for the duty to furnish services under the Act cannot be abrogated by considerations of the parties which might form a valid basis of private contract. Carnes v. St. Paul Union Stockyards Co., 164 Minn. 457, 205 N.W. 630, 206 N.W. 396; Nashville Union Stockyards v. Grissim, 153 Tenn. 225, 280 S.W. 1015; Farmers' Livestock Commission Co. v. U.S., D.C.E.D.Ill., 54 F.2d 375.
 
 
 22
 Stockyard companies are not monopolies and are in fact in active competition one with the other. The rights and duties thus occasioned must be correlated with the rights and duties of other entities recognized under the Act, and, both, finally, with the paramount public interest. An exclusionary regulation based upon diversion of business, such as we here consider, unlawfully restricts petitioner as a marketing agency and wounds the public interest. The persuasive words of the Supreme Court of Tennessee, passing upon the legality of a comparable situation, are in accord.
 
 
 23
 'Furthermore, we fail to find anything in the Packers and Stockyards Act that requires defendant or his employer to transact all of their business of receiving, buying, and selling livestock on complainant's premises, or from buying livestock and causing the same to be shipped to others than complainant. In other words, there is nothing in the act which requires * * * the defendants, to do all their business with complainant * * *.' Nashville Union Stockyards v. Grissim, supra (153 Tenn. 225, 280 S.W. 1019).
 
 
 24
 The judicial officer expressed some concern as to whether he could properly consider this case absent some showing that the business done by petitioner with the stockyards was interstate commerce. Since the regulation was designed to affect all of the agents or dealers within the area, the question of petitioner's business does not arise, for whatever amounts to a constant practice and threatens to obstruct or unduly burden interstate commerce is within the regulatory power of Congress under the commerce clause, even though in a particular instance it affects only intrastate commerce. Stafford v. Wallace, supra, Note 9. Other contentions presented by the proponents of the regulation have been considered by us and deemed to be without merit.
 
 
 25
 We conclude that Regulation 10(c) is an unlawful restriction upon the statutory rights and duties of petitioners and all market agencies and bears no reasonable relationship to the duties required of the stockyard company under the provision of the Packers and Stockyards Act. The regulation is invalid upon its face and the cause is accordingly remanded with instructions to vacate the order dismissing petitioner's complaint and enter an appropriate order requiring the Denver Union Stockyard Company to cease and desist from issuing or enforcing its Regulation 10(c).
 
 
 
 [1]
 Act of December 29, 1950, 64 Stat. 1129, § 5 U.S.C.A. 1031 et seq
 
 
 [2]
 All further references to congressional enactments are to the Packers and Stockyards Act of 1921, as amended, except as specifically noted
 
 
 [3]
 5 U.S.C.A. § 1033 provides: 'The venue of any proceeding under this chapter shall be in the judicial circuit wherein is the residence of the party or any of the parties filing the petition for review, or wherein such party or any such parties has its principal office, or in the United States Court of Appeals for the District of Columbia.'
 
 
 [4]
 5 U.S.C.A. § 1034
 
 
 [5]
 Rule 34(1) as revised, 28 U.S.C.A
 
 
 [6]
 5 U.S.C.A. § 1038
 
 
 [7]
 7 U.S.C.A. § 208
 
 
 [8]
 The administrative proceeding instituted by the petitioner was a disciplinary proceeding which the Secretary is authorized to conduct as a result of complaints made concerning regulations of stockyard owners, 7 U.S.C.A. 211. The statute provides that 'after full hearing upon a complaint' if the Secretary is of the opinion that the regulation is unjust, unreasonable, or discriminatory, he may order the stockyard owner to 'cease and desist' from enforcing any such regulation, 7 U.S.C.A. § 211
 
 
 [9]
 Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735
 
 
 [10]
 Steele v. Clinton Electric Light & Power Co., 123 Conn. 180, 193 A. 613, 112 A.L.R. 232; DePass v. Broad River Power Co., 173 S.Ct. 387, 176 S.E. 325, 95 A.L.R. 545; Hawkins v. Vermont Hydro-Electric Corp., 98 Vt. 176, 126 A. 517, 37 A.L.R. 1359