

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00169-CV

———————————————

PILLAR INCOME ASSET MANAGEMENT, INC., Appellant

V.

TLC HOSPITALITY, LLC, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-299194-18

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

In one issue comprising three arguments, Appellant Pillar Income Asset Management, Inc. challenges a take-nothing judgment entered against it and in favor of Appellee TLC Hospitality, LLC, and Pillar argues that (1) Pillar sufficiently pleaded a claim for money had and received, (2) Pillar conclusively proved its cause of action for money had and received, and (3) Pillar's claims were not barred by res judicata. Because we hold that Pillar's claims were barred by res judicata, we affirm.

Pillar and TLC were parties to a prior lawsuit (the "Initial Action") which resulted in a final judgment in 2016. That judgment was affirmed by the Tyler Court of Appeals in 2018,[1] and later that year, the supreme court denied petition for review. *TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 773 (Tex. App.—Tyler 2018, pet. denied).

In the Initial Action, Pillar sued TLC for breach of contract for the sale of an apartment complex, seeking, among other things, specific performance of the contract. At the conclusion of trial, the trial court granted specific performance and also awarded Pillar "delay damages," i.e., the loss of net cash flow caused by Pillar not

---

[1]The case was transferred from the Fort Worth Court of Appeals to the Tyler Court of Appeals by Supreme Court of Texas docket equalization order. *See TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 770 n.10 (Tex. App.—Tyler 2018, pet. denied).

being able to enjoy income generated by the property during the pendency of the Initial Action.[2] *Id.* at 757–58, 770–71.

After the supreme court denied TLC's petition for review in the Initial Action, TLC sold the property to Pillar, as ordered,[3] and Pillar sued TLC again (the "Second Action"). In the Second Action, Pillar sued TLC for a post-judgment "equitable accounting of the funds it [wa]s owed that ha[d] accrued between the date of judgment [in the Initial Action] and the date of closing of the sale ordered by the Court." In response, TLC raised the affirmative defense of res judicata.

The Second Action was tried before the bench on May 4, 2021. Three days later, the trial court signed a take-nothing judgment against Pillar. In its Findings of Fact and Conclusions of Law, the trial court concluded that Pillar's claim was barred by res judicata:

> 11. The doctrine of res judicata prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit.
>
> 12. Plaintiff's claim is barred by res judicata.

---

[2]The award of delay damages was supported by the testimony of Rhys Heinsch, Pillar's expert witness, who provided "a conservative estimate of what Pillar lost by not being able to close and enjoy the benefits of the property's operations for three years." *TLC*, 570 S.W.3d at 773. According to Heinsch, in the Initial Action he had estimated cash flow losses for 2013, 2014, and 2015 and "project[ed] out" for 2016, based upon financial information from prior years.

[3]The specific performance and closing of the sale of the apartment complex occurred on January 10, 2019.

A trial court's conclusions of law are not binding on us but are reviewed de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Here, we review the trial court's conclusion that Pillar's suit was barred by res judicata as a legal question to determine its correctness. *See id.*

Res judicata, or claim preclusion, is designed to promote judicial efficiency and protect litigants from multiple lawsuits by giving conclusive effect to final judgments. *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992); *see Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 278 & nn.63, 65 (Tex. 2004) (citing to *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646–47 (Tex. 2000) and *Eastland Cnty. v. Davisson*, 13 S.W.2d 673, 675–76 (Tex. Comm'n App. 1929, judgm't adopted), and explaining that the policy of res judicata prevents excessive litigation costs and waste of judicial and public resources), *holding modified on other grounds by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474 (Tex. 2014). The doctrine bars the relitigation of claims that were actually litigated in a prior suit, as well as litigation of claims arising out of the same transaction that, through the exercise of diligence, could have and should have been brought in a prior action. *Engelman Irrigation Dist. v. Shields Brothers, Inc.*, 514 S.W.3d 746, 750 (Tex. 2017). If two claims arise from the same transaction or series of connected transactions, a litigant is barred from filing a subsequent lawsuit based upon the same transaction or series. *Barr*, 837 S.W.2d at 630–31 (adopting the "transactional approach" to claim preclusion). Simply stated,

res judicata prevents the "splitting [of] one claim into several suits when a single suit will suffice." *Schneider*, 147 S.W.3d at 278.

Under the doctrine of res judicata, a subsequent lawsuit arising out of the same transaction will be barred if (1) there is a final judgment on the merits in the first suit by a court of competent jurisdiction, (2) the parties in the second lawsuit are the same parties as those in the first suit, and (3) the second lawsuit is based upon the same claims that were litigated or should have been litigated in the first suit. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). As our sister court has observed, where, as here, there is a contract between the parties, all claims resulting from the contractual relationship will generally arise from the same subject matter and will be barred by res judicata. *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 497 (Tex. App.—Texarkana 2002, pet. denied).

But as we have held, this rule is not absolute. *See Fort Worth Stockyards Co. v. Brown*, 161 S.W.2d 549, 555 (Tex. Civ. App.—Fort Worth 1942, no writ). When, in the interval between the first and second lawsuit, facts have changed or new facts have occurred which may alter the legal rights or relations of the parties, res judicata will not bar the second suit. *See id.*; *Genecov Grp., Inc. v. Roosth Prod. Co.*, 144 S.W.3d 546, 553 (Tex. App.—Tyler 2003, pet. denied). Thus, claims that have not accrued at the time of the previous suit are not barred by res judicata. *Genecov*, 144 S.W.3d at 553–54.

Pillar relies on this exception in challenging the trial court's ruling regarding the res judicata bar.[4] Pillar argues that because its claim against TLC in the Second Action was not "ripe"[5] for determination in the Initial Action—owing to Pillar's inability to know or determine TLC's income between the time of judgment and the time the property was sold to Pillar—res judicata did not bar the Second Action to recover delay damages for that period of time. This argument is unavailing.

That the precise amount of future income that TLC would receive through ownership of the property during the postjudgment interim period was "not known"

[4]In its briefing, Pillar goes further and argues that it is entitled to make offensive use of res judicata against TLC and bar TLC from defending against the issue of Pillar's entitlement to additional delay damages in the Second Action. Citing *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 573–74 (Tex. App.—Dallas 2014, pet. denied), Pillar contends that the three-prong test for collateral estoppel, a type of res judicata involving issue preclusion, was met in this case because (1) the issue of Pillar's entitlement to delay damages was fully and fairly litigated in the Initial Action, (2) the issue of Pillar's entitlement to delay damages was essential to the judgment in the Initial Action, and (3) the parties were cast as adversaries in the Initial Action. Thus, Pillar concludes, "all the requirements for offensive use of collateral estoppel by Pillar were met." But it is not so simple. Offensive use of collateral estoppel applies in situations when a defendant has litigated and lost on an issue in a suit *involving another party*. *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 216 (Tex. App.—Beaumont 2001, no pet.); *Johnston v. Am. Med. Int'l*, 36 S.W.3d 572, 577 (Tex. App.—Tyler 2000, pet. denied). As another sister court has held, "the general rule should be that in cases where a plaintiff could easily have joined in the earlier action . . . a trial court should not allow its use." *Fletcher v. Nat'l Bank of Com.*, 825 S.W.2d 176, 179 (Tex. App.—Amarillo 1992, no writ). In this case, because Pillar was already a party to the Initial Action, offensive use is of dubious applicability. But because we hold that res judicata bars Pillar's recovery, we need not reach Pillar's offensive-use argument.

[5]We construe Pillar's argument that the additional delay damages were not "ripe" to mean that the additional damages had not yet accrued.

6

to Pillar at the time of the Initial Action is a given. However, that does not mean that future income "could not have been determined" at the time of the Initial Action, as Pillar contends.[6] As the supreme court has pointed out, "[t]here is always a risk in assessing future damages that a particular claimant will be compensated too little or too much. But this alone has never been enough to justify a series of suits, at least when future damages are reasonably ascertainable." *Schneider*, 147 S.W.3d at 278–79.

Indeed, in his testimony in the Second Action, Pillar's damages expert Rhys Heinsch confirmed that the estimates he provided in the Initial Action for delay damages in 2016 were calculated by extrapolating historical data into the future.[7] There is nothing to suggest that in the Initial Action Heinsch could not have

---

[6]In its brief, TLC argues that the "biggest problem" with Pillar's request for additional delay damages is in its faulty damage calculation, which fails to take into account expenses incurred by TLC for capital improvements that inured to the benefit of Pillar once specific performance occurred. We recognize the potential merit of this argument if made at the trial court level, but because the court's findings and conclusions demonstrate that the judgment in the Second Action was based on res judicata and not failure of proof as to damages, we restrict our analysis to the applicability of res judicata as to the Second Action. *But see Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.) (holding that we will not reverse a trial court's judgment based on an incorrect conclusion of law when the controlling findings of fact support the judgment on a correct legal theory).

[7]And, as the record shows, in the Initial Action, Heinsch confirmed that his testimony regarding 2016 damage figures were based on "an assumption off of 2015 [financial statements]." His written damage calculations, admitted in the Initial Action as Exhibits 67 and 68—"TLC Hospitality, LLC – Financial Damages"—also contained projected cash flow loss for 2016, with a notation that the figure was "based upon Jan-May 2015 [c]ash flow."

7

performed those same calculations and projections to quantify delay damages beyond 2016.

The facts of this case in particular and common practice in general put Pillar on notice that if the trial court granted specific performance, the sale would not occur immediately, i.e., that there would be some additional delay beyond the date the judgment was signed until the date of closing. The final judgment of the Initial Action, which gave Pillar the specific performance relief that it requested, contemplated at least a 90-day delay postjudgment to closing:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the property which is the subject of the Agreement for Purchase and Sale referenced in Exhibit A1 shall be transferred to Pillar Income Asset Management, Inc. or its assigns within 90 days of the date of this judgment . . . .

Furthermore, another likely cause of delay—the invocation of the appellate process—had obviously been contemplated by Pillar when it sought and recovered attorney's fees in the event the judgment was appealed. Still, during the Initial Action, Pillar offered no evidence of a daily, monthly, annual, or any other periodic amount of income that TLC would receive in the future beyond the 2016 projections. That ship has now sailed.

Almost 20 years ago, in the context of nuisance lawsuits, the supreme court explained that prohibiting multiple lawsuits for future damages keeps litigation costs in check and advances judicial efficiency:

8

When we adopted the transactional approach to res judicata, we stated that a "subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, *could have been litigated* in a prior suit." These policies advance the interest of the litigants (who must pay for each suit), the courts (who must try each suit), and the public (who must provide jurors and administration for each suit).

Modern circumstances redouble these concerns. Perhaps a series of duplicative suits was a reasonable approach to nuisances in a day when courts were less busy and litigation cheaper. Many years ago, nuisance suits could sometimes be concluded within a year or two of filing. But that is often not the case today; for example, in this case the joinder of scores of plaintiffs and defendants in the trial court and en banc reconsideration in the court of appeals (both relatively recent innovations) meant disposition below took four and one-half years.

*Schneider*, 147 S.W.3d at 278 (internal citations omitted). The same can be said for this case. For whatever reason, in the Initial Action Pillar did not seek future delay damages beyond 2016. But it could have. And because it could have, res judicata now bars Pillar from wasting judicial resources and driving up litigation costs so it can take a second bite at the apple.

Because we hold that res judicata barred the Second Action, we need not address Pillar's two remaining arguments. The trial court's take-nothing judgment against Pillar is affirmed.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: March 10, 2022

9